FRANKLIN,
*January,*
1829.

### STATE *vs.* CURTIS WILKINSON.

It the owner of the soil set apart a piece of land for the public use, and it is used and enjoyed by the public for fifteen years, or more, it becomes a highway, and cannot be afterwards reclaimed by the original donor, or by any claiming through or under him; and whoever obstructs the free passage of the public thereon may be proceeded against by indictment.

Aad a shorter period than fifteen years may, under circumstances, afford sufficient ground on which to found a presumption of right in favor of the public.

The provision in the statute, which imposes a fine for placing any obstructions in a highway, to be recovered by complaint made to a justice of the peace, is merely cumulative, and does not take away the remedy by indictment at common law.

This was an *indictment* for erecting a building on a place called the square in the village of *St. Albans.* The bill contained two counts. The first alleged,

" That the respondent, on the 28th day of May, 1828, with force and arms, at *St. Albans,* aforesaid, did, unlawfully and injuriously, in, and upon, a certain, public square, and in the common highway, there called the public square, situate in the village of *St. Albans,* in the county of *Franklin,* lying east of, and adjoining, the stage road leading through the village of *St. Albans,* put, place, and set up, and cause to be put, placed, and set up, one large wooden building, forty feet, and upwards, in length, and thirty feet, and upwards, in breadth ; and the said building, so, as aforesaid, put, placed, and set up in and upon the aforesaid public square, and common highway, he, the said *Curtis Wilkinson,* upon and from the said 28th day of May, A. D. 1828, till the present time, with force and arms, unlawfully and injuriously hath upheld, maintained and continued, and still doth uphold, maintain and continue ; whereby the said public square and common highway, on the 28th day of May, A. D. 1828, and during all that time, was and has been greatly obstructed, narrowed and straightened, so that the citizens of this state, in and upon and through said public square and common highway, all that time, could not, nor can now, go, return, pass and repass, as they ought, and were accustomed to do ; to the great damage and common nuisance of all the citizens of this state, going and returning, passing and repassing, in and upon and through the said public square and common highway, and against the peace."

The other count describes the offence as in the first count, but called the place in question simply a highway.

On trial in the county court, the respondent objected to any evidence being given to the jury on the indictment, on the ground that the facts stated therein constituted no indictable offence against the laws of the state : but the objection was overruled by the court.

The attorney for the state then offered to show by *parol,* that the *locus in quo* was a common highway. To which the defendant objected, and insisted, that in order to prove the place in question,

FRANKLIN,
January,
1829.

State
vs.
Wilkinson.

a common highway, the attorney must produce a copy of the re-cord from the town, or proprietors' clerk's office showing that the same had been laid out and surveyed by some competent authority, (such as the select men, &c.) and that survey recorded, or that said record had been lost or destroyed. The objection was overruled.

It was then proved, that as early as 1795, *Silas Hathaway*, then owner of the land in question,gave it to the public for a public square, which was then in a state of nature ; and soon after, the people of the vicinity commenced clearing it, by taking off the trees, dig-ging up the stumps,and levelling the ground—that as early as 1800 the whole of the place in question was cleared off and leveled, and had been prior to that time used for a military parade ground, and other public purposes—that during the year 1800–1 & 2 the court house, jail and academy, all situated east of, and adjoining to, the place in question, were erected ; and that three houses of public worship had been erected within a few years, all situated east of, and adjoining, the place in question—that individuals had purchased lands and erected buildings adjoining the said place —that since the year 1804, there had been a road across it leading from the north west corner to the south east corner, where it intersects the road leading eastward to *Fairfield*, and also to *Fairfax*—that since the year 1806, the place in question had been necessarily used for a public way to the aforesaid public buildings,to go,return,pass and repass,thereon,in every direction as a common highway—that at several different times trifling repairs had been made on the road across the square by the surveyors ; and that since 1797, company and regimental trainings had been held on the place in question.

The respondent admitted he had erected the building com-plained of in the indictment on the place in question : and he claimed a right so to do by virtue of a deed of conveyance from *Silas Hathaway* to *Holloway Taylor* and others,dated June,1799, and sundry intermediate conveyances, vesting the title of *Hatha-way*, whatever it was, in *John Taylor*, under whom the defend-ant took possession.

It also appeared by the evidence introduced by the defendant, that the square had been, ever since soon after the alleged dedi-cation, used for piling lumber, bricks and stone, by those who were erecting private or public buildings in the vicinity, and occa-sionly by other individuals ; that individuals had sunk a large well on the north end of the square, and another on the south end, which were intended for public use ; and that the place in ques-tion lay east of, and adjoining, the stage road, leading through the village of *St. Albans*, and was fifty rods in length and twenty in

FRANKLIN,
January,
1829.

State
vs.
Wilkinson.

breadth ; that there were ditches on three sides of the said square, and several small bridges across the same, built at individual expense ; that the stage road west of, and adjoining it, was duly laid out prior to 1795 ; that the repairs on the same, were done principally by the district surveyors ; and that the repairs on the road across the said square, and also on the square itself, were done at individual expense principally ; that some years since *Holloway Taylor* erected a fence on said square, which was soon after torn down by individuals.

The court charged the jury, that in a criminal case they were judges of the law and the fact ; but to decide on the validity of the indictment, and whether the indictment charged an offence at law, was solely in the province of the court—that the common law was adopted in this state with certain restrictions and limitations which did not operate to prevent the indictment at common law from lying in this case ; that a highway might be established by being dedicated and set apart by the lord of the soil, and a subsequent use and occupation by the publick for twenty years, or more, without being surveyed, laid out, and recorded ; that its being a highway did not depend upon the obligation of the town, select men, or surveyors, to expend upon it public money for its reparation, or upon the liability of either of them for damages which might accrue to any one in consequence of its being out of repair ;—that, therefore, the jury were not to inquire whether the selectmen or town were so liable ; that its being a highway, did not depend upon its width, or shape ; that a highway might be six, twenty, or twenty six, rods wide, or more, or less ; that it was not necessary for the government to show, that the building was placed in that part of the place in question, which was particularly used as a travelled road or pathway ; but if they found it was placed upon *any part* of the land set apart and dedicated as a highway, that would be sufficient ; that a *private* way leading to any particular building or place, although used by the publick, would not be such a highway, that an indictment would lie for obstructing it; that a publick way was one which was originally set apart for the convenience and use of the publick, and used and occupied as such ; that even if an individual might sustain a private action for any injury resulting from the obstruction, this would not take away the right of the publick to proceed against such obstruction as a nuisance by indictment. In order to convict the respondent, the jury must find the place in question to be a common highway, and that he placed the building there ; that if they found that *Silas Hathaway* had set apart and dedicated it to the use of the public, and they had received and treated it as a publick way for

twenty years or more; that it had been during all that time, un-enclosed and open for the public to travel on, with horses and carriages, and on foot, in all directions, then they were instructed to consider it a highway, by what ever name it might be called; and that the erection of the fence by *Taylor*, its not being laid out, surveyed, or recorded; the occasional use of it for deposit-ing lumber, brick, stone, &c. as testified, the sinking of the wells; the fact that the town or selectmen might not have expended public money on it for repairs, *as such*, or that they would not be liable to individuals for not keeping the same in repair, would not divest it of the character of a common highway : and the court instructed the jury, that if they found the facts before charged to be necessary to sustain an indictment for a nuisance on a common highway, they were to consider the indictment good, and find ac-cordingly. Verdict, guilty. To which decisions and charge of the court the respondent excepted, and thereupon the cause was or-dered to pass to the Supreme Court.

*Argument for the respondent.*—The place in question is not a common highway. By the common law, towns are bound to keep their highways in repair. 3 *Jacob's L. D.* 277.—1 *Bla. Com.* 357. Can individuals make a highway at common law ? What-ever may be the common law on this subject, it is not in force in this state, because our statutes have not adopted the com-mon law in its full extent. See *State papers*, 288, 450, and *statute*, 57. The legislature have passed a number of statutes on this subject, and thereby abrogated the common law.—*Old Stat-ute*, 88.—*Statute*, 427, 443,*sec.* 2.—From these and a variety of other statutes which might be cited it is evident that the legisla-ture did not contemplate any common law mode of making high-ways by dedication.—*Hinckley* vs. *Hastings*, 2 *Pick. Rep.* 164. But granting that a highway can be created by dedication, still, the dedication must be accepted, for several reasons :—The towns are bound to repair, and keep in repair, all highways, and are liable to pay all damages sustained by the roads being out of re-pair.—*Statute*, 432, *sec.* 13.—It is an absurdity to suppose that it is in the power of individuals to put all these burthens on the town without their consent. The consent of the town to accept of the dedication must be shown by the official acts of the authori-zed agents of the town—*Commonwealth* vs. *Charlestown*, 1 *Pick-ering*, 189.—*Bailey* vs. *Fairfield*, *Brayton's Rep.* 126.

The facts stated in the indictment constitute no offence against the laws of this state for which an indictment can be sustained. The statute adopting the common law has not adopted the English

<div style="margin-left">

FRANKLIN,
*January,*
1829.

State
*vs.*
Wilkinson.

</div>

criminal code. The punishment of a nuisance at common law, is fine and imprisonment in the discretion of the court.—*3 Bac. Abr.* 689.—Whether the court can, at common law, order the nuisance abated, is doubtful. If the indictment is sustained at common law, the common law punishment must follow a conviction.—*4 T. R. 202, Rex* vs. *Harris.*—Our statute, having fixed the penalty and pointed out the mode of prosecution, has taken away the common law remedy.—*Stat.* 433, *sec.* 16 & 17.—1 *Bla. Com.* 89.

The charge of the court, that the jury had no right to determine that the facts stated in the indictment constituted no offence against the laws of this state, was incorrect. The court, by this determination, took from the jury the right of deciding on the law, which, in criminal cases, is a part of their duty.—*4 Bla. Com.* 361.—*5 Burrow*, 2661, *Rex* vs. *Woodfall.*—1 *Chit. C. L.* 520.—1 *Burk*, 323.

*Argument in behalf of the state.*—1. It is contended on the part of the state, that the indictment does charge an offence against the laws of this state, inasmuch as every unauthorized obstruction of a common highway is an offence at common law.—*2d Swift's Digest*, 350.—*2 Bay's Rep.* 290.-*2 Hawk.* 152.—1 *Camp. Rep.* 260.—1 *Dal.* 150; and by our statute the common law is adopted as the law of this state. See *Stat. p.* 57.

2. The act for laying out, making, repairing, and clearing highways, passed March, 3d, 1797, does not by any of its provisions repeal, but is in affirmance of, the common law.—*Stat.* 427, *Sec.* 1, 16, 17.

3. Statutes affirmative, and such as are cumulative of the common law remedy, do not repeal the common law without express words to that effect.—*Comyn's Digest*, 260.—1 *Chit. Pl.* 144.—1 *Com. Dig.* 322.—*5 John. Rep.* 174.—10 *Mass. Rep.* 389.—*4 Bac. Abr.* 641.

4. In order to constitute a common highway in this state, it is not necessary that the same should be laid out, surveyed and recorded, under the provisions of our statute ; but a *dedication* of the *locus in quo*, by the owner of the soil, to the publick, and by them accepted, and used as a common highway for the term of twenty years, or more, vests a right in the publick, and constitutes it to all intents and purposes a common highway, and the owner of the soil can never again resume his right.—1 *Camp. Rep.* 260.—11 *East.* 375, *note.*—*Hammond's N. P.* 192, and onward.—*2 Starkie's Ev.* 662, and onward.—*2 Starkie*, 313, *note.*—*2 N. H. Rep.* 513, *State* vs. *Town* of *Compton.*—*Strange*, 1004, *Lade* vs. *Shepard.*

FRANKLIN,
January,
1829.

State
vs.
Wilkinson.

5. No particular form or dimensions of the *locus in quo* is necessary to constitute it a common highway ; but it is sufficient to show that the publick have acquired the right, and have used it as a common highway, and that the same, as such, is a publick convenience ; neither is it necessary that it terminate in any town or publick road.—1 *Camp. Rep.* 260.—2 *Starkie's Ev.* 665, and onward.—*Hammond's N. P.* 192, and onward.—7 *John. Rep.* 105.—2 *Hawk.* 152.

6. If a building or other encroachment be put on any part of the highway, the law presumes it to be a nuisance without proof that it actually obstructs the travel.—1 *Dal.* 150.

7. It is not necessary that the town should expend publick money on the place in question in order to constitute it a common highway ; nor is it material whether the town would, or would not, be liable for damage sustained by individuals, by the same being out of repair.

8. It is contended that the court did right in charging the jury that, " to decide on the validity of the indictment, and whether " the indictment charged an offence at law, was solely in the " province of the court." But if this court should be of opinion that this part of the charge in any way infringed the prerogative of the jury, still it is contended that the court did in the charge directly submit to the jury every question of *law* and *fact* that would be necessary to find in order to constitute the offence charged in the indictment.

9. If the court should consider that the indictment did charge sufficient to constitute an offence at law, they will not grant a new trial for the purpose of taking the opinion of the jury on that question.

PRENTISS, J. pronounced the opinion of the court.—It appears to be a well established doctrine of the common law, that a highway may be created by dedication of it to the public by the owner of the soil, and the use of it by the public as such ; and in such case, the public acquire a right or easement, which the owner cannot lawfully interrupt, though the soil and freehold remain in him. (*Lade* vs. *Shepard*, 2 *Stra.* 1004.) The principle is, that if the way is of public convenience, and has been used by the public without interruption, a presumption arises of their right, and a dedication of it to them by the owner may be inferred. In *Rex* vs. *Lloyd*, 1 *Camp. Cas.* 260, *Lord Ellenborough* held, that a private individual who builds a street, or otherwise opens a thoroughfare to the public, without any visible marks of exclusion or prohibition to persons using it, will, after a great number of

FRANKLIN,
January,
1829.

State
vs.
Wilkinson.

years, be considered as having dedicated it to the public, and it becomes a highway, to obstruct which is an indictable offence; In the case of the *Rugby Charity* vs. *Merryweather*, 11 *East,* 375, *n.*, it was held by lord *Kenyon,* that permitting the public at large to have the free use of a way, or street, for six years, was quite a sufficient time for presuming a dedication of the way to the public, and after that length of time it was too late for the owners of the soil to assert their right. The principle, that the public may acquire an easement in this manner, was fully recognized in the case of *Woodyer* vs. *Hadden,* 5 *Taunt.* 126, though the case was decided against the right of the public, upon the ground, that there was no evidence from which a dedication to the public could be inferred. It was observed by *Chambre, J.,* that a dedication is not, like a grant, presumed from length of time only, but may, if the act of dedication be unequivocal, take place immediately ; as if a man builds a double row of houses, opening into an ancient street at each end, making a street, and sells or lets the houses, that is instantly a highway. *Hammond* considers the doctrine as resting upon the principle of general utility, and very justly remarks, that the owner, after permitting the public to have the free and unmolested use of a way, ought not to be allowed to contest the right of the public, who may have embarked in projects, and formed expectations, upon the strength of the appearances he held out to them, which it would be ruinous to disappoint. (*Ham. N. P.* 194.) Without deciding what length of time is necessary to create a right in the public, we think we may safely say, that where the public have had the use and enjoyment of a way for fifteen years, or more, they have acquired a right, which cannot be disturbed. It is a rule established in analogy to our statute of limitations, that an exclusive use, for fifteen years, affords a conclusive presumption, in favour of an individual, of a right of way over the soil of another, of a right to the enjoyment of water, or to possess lights unobstructed, and of various other incorporeal rights ; and it seems quite consistent to say, that the use and enjoyment of a common way for the same length of time, should, at least, be sufficient to give an easement to the public. We are not required in the present case to extend the doctrine further than this ; and we do not mean to decide, that a shorter period would not, under circumstances, afford sufficient ground on which to found a presumption of right in favour of the public.

It was a point much discussed in the argument, whether a way, thus created, imposed upon the town, in which it was situate, the charge of keeping it in repair. In the case of *the King* vs. *the*

*inhabitants of St. Benedict*, 4 *Barn.* and *Ald.* 447, *Bailey*, J. said, that he did not accede to the doctrine, that because there is a dedication of the road by the owner of the soil, and the public use it, that the parish is,therefore,bound to repair ; but he thought, as the parish had no power to prevent the opening of a road, or to obstruct the public use of it, there ought to be, in addition, evidence of an acquiescence by the parish in the dedication. If a way is of public convenience, and has been used as a common highway a sufficient length of time to create a right in the public, and an acquiescence by the town may be inferred from repairs actually made by them,or otherwise, we do not see why they are not legally bound to repair it, as far as the convenience of passing and the accommodation of the public may require. But if it should be held, that the obligation of the town to repair, extends only to such ways as are laid out and established according to the provisions of the statutes, it would only follow, that a public way may exist without any such obligation on the town. A highway, according to the common law, is a place in which all the people have a right to pass. A common street and public highway are the same, and any way, which is common to all the people, may be called a highway. A navigable river may be termed a common highway, and any obstruction to the passage upon it may be redressed by indictment. *(Hawk. b.* 1. *c.* 76. *s.* 1.—2 *Chit. C. L.* 233.*)* In *Shaw* vs. *Crawford*, 10 *John. Rep.* 237, it was held, that a stream, though the fee of it belonged to the owners of the adjoining banks and it was private property, having been used by the public, for the purpose of rafting down boards and timber, for a great length of time, had become a public highway, and any obstruction of it was a public nuisance. The court said, that such a usage would, of itself, grow into a public right, and especially, where the public interest, or public convenience, was essentially promoted. If a way is used for passing and repassing, and is common to all the people, it is a highway, whether it is called a road, street, or public square. In the case before us, the *locus in quo* is alleged to be a certain *public square* and *common highway*, according to the precedent in 2 *Chit. C. L.* 389 ; and the evidence was, that it was laid out and opened at an early period, and has been'used by the public as a common highway for more than thirty years. It is situate in the centre of a populous and flourishing village, and forms a large and commodious street, communicating with roads leading in various directions into different parts of the county. Expensive buildings are erected around it, some of which are for public use, such as an academy, several churches, and a court house for the

FRANKLIN,
*January*,
1829.

State
*vs*
Wilkinson.

FRANKLIN, county ; and having been open for so long a space of time to the
January, public, they have acquired a right in it which cannot be interrupt-
1829. ed. It is understood that in many villages in the state, and par-
State ticularly in some of the county towns, where it is usual for large
vs. assemblages of people to collect at court, there are spacious streets,
Wilkinson. for the use and accommodation of the public, thrown out in the
same manner, and enjoyed under the same right, as this; and to
establish a different doctrine from that already laid down, would
not only be prejudicial to the public, but produce disappointment
and ruin to individuals.

If the *locus in quo* is a highway, it is a right or franchise
belonging to all the people, and an indictment will lie for
any obstruction of it. It is a clear principle of the common law,
that every unauthorized obstruction of a highway is an indictable
offence. In the case of *The King* vs. *Russell*, 6 *East*, 427,
which was an indictment for a nuisance in *a public street and
highway*, by obstructing the same, the court said, that the prima-
ry object of the street was for the free passage of the public, and
any thing which impeded that free passage, without necessity,
was a nuisance. The provision in the statute which imposes a
fine not exceeding seven dollars, for placing any obstruction in the
highway, to be recovered by complaint made to a justice of the
peace, if applicable to this case, is merely cumulative, and does not
take away the remedy by indictment at common law. It is true,
as was resolved in *Castle's* case, *Cro. Jac.* 644, that when a stat-
ute appoints a penalty for the doing of any thing, which was no of-
fence before, and appoints how it shall be recovered, it shall be pun-
ished by that means, and not by indictment ; but it is otherwise, if the
doing of the thing was an offence at common law, and punishable
before the making of the statute. The rule of distinction is very
fully and clearly stated in the case of *Rex* vs. *Robinson*, 2 *Burr.*
799. It is there laid down by lord *Mansfield*, that where a stat-
ute creates a new offence, by prohibiting and making unlawful
any thing which was lawful before, and appoints a specific reme-
dy against such new offence, by a particular sanction and partic-
ular method of proceeding, that particular method of proceeding
must be pursued, and no other ; but where the offence was an-
tecedently punishable by a common law proceeding, there either
method may be pursued, and the prosecutor is at liberty to pro-
ceed either by indictment at common law, or in the method pre-
scribed by the statute, because there the sanction is cumulative,
and does not exclude the common law punishment.

There is no doubt, that in criminal cases, the jury are the judg-
es of the law as well as the fact. This is the true principle of the

common law, and it is peculiarly appropriate to a free government, where it is unquestionably both wise and fit, that the people should retain in their own hands as much of the administration of justice as is consistent with the regular and orderly dispensation of it, and the security of person and property. This power the people exercise in criminal cases, in the persons of jurors, selected from among themselves from time to time, as occasion may require ; and while the power, thus retained by them, furnishes the most effectual security against the possible exertion of arbitrary authority by the judges, it affords the best protection to innocence. The direction given to the jury, in relation to their right to decide the law as well as the fact, as stated in the exceptions, carries upon the face of it a seeming inconsistency ; but taking the whole direction together, we think the meaning of the court below must have been, and such is probably the fair construction, that the jury were to decide on the evidence and the law arising upon the facts proved, but not upon the validity or sufficiency of the indictment.

<div align="right">Exceptions and motion in arrest overruled,<br>and judgment against the respondent.</div>

*Smith* and *Brown,* for the state.

*Allen, Smalley & Adams* and *Hunt,* for the defendant.