State *v.* Atkinson et al.

---

### STATE *v.* JOSEPH ATKINSON AND OTHERS.

(Decided at Woodstock Special Term Sept. 1852.)

*Nuisance. Dedication to public use. Indictment. Forfeiture.*

Courts will not presume any fact that works a forfeiture of an estate.

Where the fee of land is vested in a town, or in an individual, yet if the use and occupancy be in the public, as a highway or common, any obstruction thereof is a nuisance, for which, the persons making such obstruction, may be presented by indictment.

A public common in such case, may be described as a highway.

INDICTMENT, for erecting and continuing a nuisance on a public common in Newbury.

Plea, not guilty, and trial by jury.

The attorney for the State read in evidence a *copy* of a quitclaim deed from William B. Bannister to Thomas Johnson, and 32 others, dated May 23, 1801, conveying the premises upon which the alledged nuisance was erected. The *habendum* of which is as follows:—

" To have and to hold the said bargained, granted and quitclaim-" ed premises to them the said [*naming all the grantees*] their " heirs and assigns forever, under the conditions, limitations, re-" servations and remainders, hereinafter mentioned. Now it is " the true intent and meaning of the foregoing instrument and it

State *v.* Atkinson et al.

"is made and executed for the express purpose that the above "granted and bargained premises shall be thrown open to be a "public common or green forever; never to be fenced, enclosed or "obstructed in any part or manner whatever. Saving and except-"ing to the above mentioned grantees, their heirs and assigns the "privilege and right to erect and complete a suitable house, for "the purpose of convening the General Assembly of this State, "and to be improved likewise for a county Grammar School house, "provided such school may be incorporated and established in this "town, and the said grantees shall have the right, from time to "time as may be necessary, to repair such house, and likewise to "erect, and in like manner keep in repair, such other building or "buildings as may be necessary and convenient for the purpose "aforesaid.  Provided, also, and if it should happen that the said "county Grammar School shall not be incorporated and establish-"ed in this town, and if the General Assembly of this State, shall "not after its next session, in future meet and convene in this "town, so that both the purposes above contemplated, or either of "them shall fail, it is hereby further saved and reserved to the said "grantees, their heirs and assigns, that they shall have the right "to convert such building or buildings as may have been erected "for the purposes aforesaid, and to improve the same for such "other moral and useful purpose or purposes, as a majority of said "grantees, their heirs and assigns may agree, meaning by such "majority, a majority of interest, in proportion as said grantees, "their heirs and assigns may advance and pay, in so erecting and "completing such building or buildings."

"And provided, further, that on failure of both purposes, or ei-"ther of them, first mentioned in the conditional part of this "instrument, and if a majority of said grantees, their heirs and "assigns shall agree to convert such building or buildings as may "have been erected for such first mentioned purposes, and to im-"prove them for any other moral and useful purpose or purposes, "it is hereby further excepted and reserved to said grantees, their "heirs and assigns, that they shall have the right to erect and keep "in repair on said premises, such other building or buildings as "may be necessary and convenient, to facilitate and promote such "last mentioned purpose or purposes."

"And provided, further, that if any or all of said buildings shall

State *v.* Atkinson et al.

"at any time in future, be destroyed or come to ruin by natural "decay, by fire or any other casualty whatever, it is hereby fur-"ther excepted and reserved to said grantees, their heirs and "assigns, that they shall have right to repair and rebuild any such "building or buildings so decayed or destroyed, at any time within "five years next after the same shall so have become unfit for oc-"cupation and improvement, and not after."

"And it is hereby further provided and conditioned, that if "both the purposes first mentioned in this conditional part of this "instrument shall fail, and if the said grantees before mentioned, "their heirs and assigns shall neglect, for the space of five years, "from and after the date of this instrument, to erect on said prem-"ises, and complete such building or buildings as is herein before "contemplated, or if for five years together, next after any such "building or buildings shall have decayed, or in any manner been "destroyed or become unfit for occupation and improvement, they "shall neglect to repair or rebuild such building or buildings, or "if the said grantees, their heirs and assigns, shall at any time for "the space of five years together, neglect to occupy or improve "such building or buildings as is herein contemplated, for some mor-"al and useful purpose and purposes, excepting, however, for the "public and ordinary meeting and transacting of business in and "for said town of Newbury, and meaning that such an improve-"ment and occupation of said building or buildings, for such last "mentioned purposes, shall not save and prevent the forfeiture "and remainder hereinafter provided."

"Now upon all and several the contingencies in this last proviso "mentioned, the remainder, meaning thereby the whole interest, "right and title in and unto the above granted and bargained "premises is hereby saved, given, granted, conveyed and confirm-"ed to the selectmen and treasurer of the town of Newbury, for "the time being, and to their heirs and successors in office ; the "same to be an open or public common to, and for the purpose, use "and benefit of said town forever."

Said deed was duly recorded May 25, 1801.

It was further shown, that the respondents erected a school-house on the premises described in said deed, in the summer of 1851, in pursuance of a vote of the school district in which said premises are situate, appointing the respondents a committee for that pur-

State *v.* Atkinson et al.

pose. It was further proved that in 1801, a house was erected on said premises to convene the legislature of this State, who held their session therein in 1801, but have never held a session there since.

It further appeared, that the town of Newbury held their town meetings in said building up to the year 1829, when they ceased to occupy it, and built a town house about four miles distant, where they have ever since held their meetings. It was further shown on the part of the State, that the district school was kept in a room in said building from about 1809, up to 1828 or 1829, when the building having become unfit for use, (and soon after went to decay,) a new school house was erected on said premises, on or near the north-east corner. That when this house was about to be built by the district, there was some question made by some one of the district, about the right to build said house there. That the district school was kept in this house up to the time of building the house in 1851, at which time the former school-house had become unfit for use.

It appeared that the latter house was erected on the east side of said premises, about midway, and on the site where the old State house formerly stood, and that at the meeting, when it was voted by the district to erect said house, one of the members of the district told them they should not put the house there. It was further shown, that no Grammar School was ever incorporated in said Newbury; that said premises had remained open and uninclosed since 1801, and that a highway passed along by the north side of the premises, and also on the west side. It also appeared that there was one dwelling-house on the adjacent lands west, and one north, and both across the highways from said premises, but it did not appear that said houses, or any others, were erected facing said premises, since the date of the Bannister deed. Said school-house, built by the respondents, is on the highest land on said premises, and the best place thereon for a public building.

On this showing the government rested.

The respondents then offered to prove, that at the time said State house was erected, and when the district school was first kept there, all the grantees in said Bannister deed lived in Newbury, and twenty of them in said school district. That said State house was erected in 1801, at an expense of $1250, contributed

mainly by said grantees, and that $990 of said $1250, was contributed by the grantees living in said district. That as early as 1802, a school room was finished off and fitted up in said building, and that the district school was kept therein, as long as said building was fit for use, the said district repairing said school room from time to time; that in 1828 ( said State house having become dilapidated and unfit for use,) the district erected a new school-house on the north-east corner of said premises, where the district school has been kept until the erection of the new house in 1851, in which the school is now kept, the old one having become unfit for use.

The respondents further offered to prove, that the said grantees and their heirs residing in said district, have always sent their scholars to said school, and that there never has been any interference, interruption or objection to said schools being so kept, or to the erecting of said houses, either by said grantees, or said town, or by any other person or persons, except as before stated.

The respondents further offered to prove, that the school-house last erected, is a good and commodious one,—was erected on the extreme east side of said premises, on the site where the old State house stood, and in a manner not likely to incommode the ordinary use of said premises as a common, and leaving sufficient room for the erections contemplated in the provisions of said deed, and that the town had never occupied said premises for any purpose, since the decay of the old State house in 1829, or thereabouts.

This evidence was objected to and excluded, to which the respondents excepted; the jury returned a verdict of guilty.

*A. Underwood* for the respondents.

The evidence offered and excluded, is to be taken as true for the purposes of this hearing.

The respondents and the school district are occupying the school-house agreeably to the *express* provisions of the Bannister deed. That from the long time they have so occupied, a license is to be *presumed* from the grantees.

It is expressly provided, that in case of a failure of the legislature to convene there, and in case no Grammar School shall be incorporated and established there, that a majority of the grantees may improve the buildings erected, or erect others, for any other

moral or useful purpose, and nothing short of a *non user* for five consecutive years, works a forfeiture to the town.

It cannot be pretended that a common school is not a *moral* and *useful purpose* within the meaning of the deed. *Carleton* v. *Langdon,* 19 Vt. 210.

It cannot be denied that the grantees could have erected a school-house on the premises, and if they could, any other person can do so, by their consent.

If the respondents are liable, the district or their officers were liable for keeping a school in the old State house, and for erecting the first school-house.

The district have claimed and enjoyed the right of having a school on the premises for fifty years, from which a grant is to be presumed.

If the grantees could erect a school-house on the premises, they could license the district to do so, for it is the use, that is provided for, and not the persons who may use.

The respondents insist that there never has been such a dedication to the public use, as is necessary to support an indictment.

To constitute such dedication, there must be not only a manifest intention, on the part of the owner, to dedicate the land to public use, but the public, *relying on that intention,* must actually enter into the use and occupancy, in such manner as to render it unjust to reclaim it. *State* v. *Trask,* 6 Vt. 355.

In the present case, the public never have used the common.

The only use the town ever made of it was to hold town meetings in the State house to 1828, since which, they have totally abandoned it. *State* v. *Wilkinson,* 2 Vt. 480. *Abbott* v. *Mills,* 3 Vt. 521. *State* v. *Catlin,* 3 Vt. 530. *Pomeroy* v. *Mills,* 3 Vt. 279. *Foundling Hospital,* 11 East. 375.

The school district have had the exclusive use of the premises for twenty-three years.

It is insisted that it makes no difference that the first school-house was erected in a place different from the last, since the district have been the sole occupiers for twenty-three years.

The deed in no event, makes the premises such public property, that an indictment will lay. The property in no case vests in the public generally, but in a certain event it vests in the town.

State *v.* Atkinson et al.

*A. M. Dickey* and *Peck & Colby* for the State.

The grantees of Bannister hold the premises in trust, for the use of the public. It is expressly stipulated in the deed, that the premises should forever remain an open common, subject to the right of the grantees to erect buildings thereon for certain purposes.

The old State house had not been used for any purpose, for more than twenty years, and the right to erect buildings thereon, for any purpose, has long since expired, unless perhaps the town may have such right, for town purposes.

Independent of the deed, the respondents are responsible for their acts. The premises have so long been open as a common, that a dedication to the public may be presumed. *State* v. *Catlin*, 3 Vt. 530. *Cincinnati* v. *White*, 6 Peters 431.

The assent of the trustees is not to be presumed from their silence. Nothing short of their express assent would avail the respondents, and after this lapse of time, we insist that their assent would not avail them. The right of the trustees to assent, had expired.

If the district, by lapse of time, had acquired a right to have a school-house where the first was erected, it does not give them a right to erect one on another part of the premises. They had no title, and can hold no more than they actually occupied for fifteen years. *State* v. *Trask*, 6 Vt. 355.

If the public had acquired an interest in the common, it is quite evident that the evidence offered was properly rejected. It could not legally affect the rights of the parties.

The opinion of the court was delivered by

ISHAM, J. The questions in this case arise upon the construction of the deed from Bannister to Thomas Johnson and others, and involves the inquiry, in whom is vested the title to the premises therein described, and whether the erection of the school house by the district was an appropriation of the use of the land consistent with its provisions. The object of the conveyance is definitely set forth in the deed, and whether the title of the land remains in the grantees, or has passed under its provisions to the town of Newbury, they are alike chargeable with the trust therein expressed, and neither can permit its appropriation for any other purpose or object.

State *v.* Atkinson et al.

In the construction of this instrument, its several provisions are to be taken together. The whole context is to be considered for the purpose of ascertaining and carrying into effect the intention of the parties as expressed therein. We apprehend no serious difficulty can arise in ascertaining that intention, or the interest and estate which the grantees took under this deed. In the first place, it is evident that the grantees took an estate in fee, for the conveyance is *to them, their heirs, and assigns forever.* In the second place, it was a conditional grant, as the deed expressly provides, that if the objects mentioned are not carried into effect within a given time, or if they neglect to occupy or improve them according to its provisions for the same period, they shall be divested of their interest in the premises, and the title shall pass into, and vest in the town of Newbury. And in the third place, the conveyance created a trust interest, as the grantees took no exclusive beneficial interest under the deed, but its entire benefit and use, was given and inured to the public, and was so to remain forever. In relation, also, to the object of the conveyance, and the persons by whom the trust interest was to be carried into effect, the intention of the grantor is equally obvious. The premises are forever to remain a public common, whether in the hands of the grantees, or the town of Newbury, and are not to be enclosed or obstructed in any manner, except for the purpose of erecting a suitable house for convening the general assembly of this state, and to be improved likewise for a county grammar school, if such should be incorporated in that town; and in case the buildings to be erected are not used for those purposes, they are to be appropriated for *some moral and useful purpose,* to be designated by the grantees in the deed, having a majority in interest.

The exercise of this right or power, in determining what is that moral and useful purpose, to which the use of the premises may be appropriated, is manifestly confined to the grantees, so long as the legal interest in the premises remains in them; but will pass to those, to whom they may have conveyed, or to their heirs, in case of the death of any of them. Wherever the title passes, there is vested the right of the trustees to see that the object of the conveyance is carried into effect, and to determine upon the useful and moral purposes, to which the premises may be applied. This construction, is necessary to preserve the estate, as an estate in fee;

otherwise, upon the death of the grantees, the property would pass to the town, as there would be no persons in being to execute the continued trust. The express provisions of the deed would be thereby defeated, for the conveyance was *to them, their heirs and assigns forever*; and their decision or action upon the subject, when made by a majority in interest is conclusive, and no one has a right to interfere, or call the matter in question, provided it is a moral and useful purpose to which the premises are applied. The town, or the public, have no title to the premises, so long: as the grantees, their heirs, and assigns have not neglected for the period of five years, to exercise their powers and duties under the deed. Under this construction of the deed the case is resolved into the inquiry, whether the grantees, their heirs, or assigns have lost, or forfeited their rights under this deed; and whether the title has passed from them to the town of Newbury, by any neglect to comply with the conditions and provisions of the deed. In disposing of this question, it becomes necessary to refer to the testimony and the facts, as stated in the exceptions.

The deed was executed May 3, 1801. The house for the use of the legislature was immediately erected, and its annual session was held therein for that year, but has never convened there for that purpose, since. A county grammar school has never been established or incorporated within the town of Newbury. Those two objects and purposes for which the conveyance was made, are therefore removed. Yet by the erection of that house for that purpose, there was such an acceptance of the grant and trust on the part of the grantees, as made the conveyance perpetual and binding.

As those objects of the conveyance failed, the duty devolved upon the grantees to occupy and improve the building so erected for some moral and useful purpose. And in the discharge of this duty, in order to keep their title perfect under their deed, it was not sufficient that the grantees remained inactive, while others entered upon the premises without license, and used the premises, though for purposes strictly moral and useful. For such possession would be adverse to that of the grantees, and a perfect title to the premises might be acquired by lapse of time against them, by such possession. 1 Saund. 280.

But there must be some positive act on the part of the grantees,

as a contract or license, authorising all those in possession of the premises, thus to occupy them under the deed. In other words, there must be a possession and occupancy of the premises by the grantees or those under them, for the purpose of carrying into effect the various objects referred to in the deed, and to such full and absolute extent, as to forbid the use and occupation of any part of the same by others having *no right or authority under them.* The occupation of the building by the town of Newbury for town meetings can have no effect, to save from forfeiture the rights of the grantees under this deed, as it contains an express provision to that effect. Neither will it have any effect in establishing the title of the town, for such use was contemplated by the parties, as being consistent with the right of the grantees under the deed.

In relation to the occupation of the premises or building which had been erected by the grantees, it was proved, that from about 1809 to 1829, a district school was kept in a room in the building erected for a state house. And the respondents offered to prove that the room was so fitted up as early as 1802, and at the expiration of that period the house had become dilapidated and unfit for use. It does not appear very definitely by what means, or under what circumstances the school was commenced and continued in that building, from 1802 to 1829. Whether it arose from the act of the school district alone, in taking possession of the otherwise unoccupied building, and the grantees under the deed neglecting to interfere with such interruption, or whether the school was established by the grantees, as one of the moral and useful purposes to which they had a right to appropriate its use and occupancy.

But from the circumstance that the school was established therein so soon after its erection, and the fact that the building was erected and built by the grantees at their expense, it is not unreasonable to presume that the school was established, and the building used and occupied therefor, by the license and authority of the grantees in the deed. The court will not presume any fact, that works a forfeiture of an estate. Such facts must be matter of strict proof, and a seizure and possession once having been proved in the grantees under their deed, such seizure is presumed to continue until a disseizin is proved. *Brown* v. *King*, 5 Met. R. 173. We think, therefore, that the title and right of possession of these premises continued in the grantees of this deed, during the period

XXIV.        30

that the building erected by them was so used and occupied. In 1829, the building erected for a state house became unfit for use and went to ruin. It was never repaired or rebuilt by the grantees. But a new school house was erected, as the case states, by the school district in a different place on the premises, and that building was used and occupied by the district from 1829 to 1851. The case is destitute of any facts showing the assent of the grantees under the deed, to this erection and possession of that portion of the land by the district, and also, of any circumstances from which such assent can be presumed, for it is affirmatively found, that it was erected for the school district, and this impliedly negatives any other right. The assent of the grantees, is not to be found, or inferred, from their making no objections to such erection and use, at that, or any subsequent time, or from their neglect to maintain their rights under their deed, against this entry and occupancy; for such assent can be given only, by some positive act of the grantees, or those holding under them, having a majority in interest. And, from the further consideration, that it is by such neglect that a forfeiture of the estate arises, and vests the title, under the deed, in the town of Newbury. Neither can such assent be drawn from the fact, that a majority in interest of the grantees, lived in the district, and sent their children to that school, for the obvious reason, that such acts of the grantees, are such as would likewise naturally occur, if there had been an open renunciation of their right to the premises, and are consistent with an entire abandonment of their claims under the deed. The evidence, therefore, offered by the respondents, in proof of those facts, was properly rejected. To make the erection of that building, and the use of the premises, an act of the grantees, or those holding under them, and done in the exercise of their right under the deed, it should appear, that some distinct and positive act was done by a majority in interest of the grantees, giving such license to the district, and it should be an act of that character, totally inconsistent with the idea of a relinquishment or abandonment of their claim, or right under the deed. The case is totally destitute of any such circumstance or consideration, and we can arrive at no other conclusion, from the facts in the case, than that, that act on the part of the district, was done in disregard of the rights of the grantees under the deed, and, to the extent of their occupation of the premises,

was a disseizin in fact. And the neglect of the grantees, or those claiming under them, for five years thereafter to sustain their rights to that portion of the premises, and to rebuild and repair the buildings that were erected by them, and to use and occupy the same for such moral and useful purposes, as were contemplated in the deed, worked a forfeiture of their estate and interest in the premises, and vested the same in the town of Newbury, to hold under that deed, for an open and public common forever. The erection of that building by the district, in 1851, in a different place on the premises, was, therefore, wrongfully made, and was in violation of the rights of the town of Newbury and the public, under that deed. And though the fee of the premises may be vested in the town, or be private property even, yet if the use and occupancy be given to the public, as a highway, public square, or common, and it has been for a long time used for passing and re-passing, and has been common to all the people, any obstruction thereof, or nuisance erected thereon, may be prosecuted by indict-ment. Such is the doctrine in the case of *State* v. *Wilkinson*, 2 Vt. 480, and in *Shaw* v. *Crawford*, 10 John. R. 237, and the premises may be described in an indictment as a public highway. 2 Chitty C. L. 389.

The result is, that the respondents take nothing by their motion.