Wood v. Hurd.

---

WILLIAM A. WOOD v. EDWARD C. HURD.

1. A by-road has no statutory existence. It is, as its name imports, an obscure or neighborhood road in its earlier existence, not used to any great extent by the public, yet so far a public road that the public have, of right, free access to it at all times.

2. To constitute such road, the land occupied by it must have been given up or dedicated by its owner for the purposes of a by-road to all who may wish to enjoy it.

3. What is a dedication is in all cases a question of intention, and must be proved or disproved by the acts of the owner and the circumstances under which the user has been permitted. It is a mixed question of law and fact, to be found by the jury under the direction of the court, upon consideration of all the circumstances of the case.

4. The right of the public accrues by such acquiescence as carries with it the intention of the owner to subject his fee to the public use, and mere acquiescence for twenty years, unaccompanied by any act which repels the presumption of such intention, is conclusive evidence of abandonment to the public.

5. The use for the whole time of limitation must necessarily be of right; therefore, user by mere license, which is subject at any time to revocation, will afford no foundation from which to presume the gift.

On rule to show cause why the verdict should not be set aside.

The plaintiff sought to recover damages against the defendant for obstructing a by-road in the county of Morris, which plaintiff alleged he had a right to use. There was a verdict for defendant, which the plaintiff now seeks to set aside. The principal question involved was, whether the by-road had legal existence, as claimed by the plaintiff.

For the plaintiff, *Vanatta*.

For the defendant, *Pitney*.

The opinion of the court was delivered by

VAN SYCKEL, J. The declaration in this action is framed to recover damages which the plaintiff has sustained by the obstruction by defendant of a by-road in the county of Morris, which the plaintiff alleges that he had a right to use. The trial below having resulted in a verdict for the defendant, the case comes here on a rule to show cause why the verdict shall not be set aside—*First.* For alleged error in the charge of the court. *Second.* Because the verdict is against the weight of evidence.

The real question in the cause was, whether the by-road

had a legal existence, and this leads to the consideration of the foundation upon which the public way known as a by-road rests in this state.

There are three kinds of roads known to our law—1. Public roads. 2. Private roads. 3. By-roads.

No statutory provision is made for laying out the latter. All these differ from a mere right of way, which is an incorporeal hereditament, to which title may be acquired.

A private road laid out at the instance of an individual, and more particularly for the applicant's use, is nevertheless subject to travel by the public. A by-road has no statutory origin, yet the right of the public to its enjoyment is as securely held as in either of the other roads, and its free and uninterrupted travel is so absolutely necessary, that it is important that the principle upon which the public right rests should be clearly stated.

A by-road, as its name imports, is an obscure or neighborhood road in its earlier existence, not used to any great extent by the public, yet so far a public road that the public have, of right, free access to it at all times.

To constitute such road, the land occupied by it must have been given up or dedicated by its owner for the purposes of a by-road to all who may wish to enjoy it. The doctrine of dedication rests on the principle of the common law, which is of great importance and almost universal application, that whenever a person has made representations, or pursued a line of conduct with a view to lead others to adopt a particular course of action, and such representations or conduct have produced that effect, they shall be binding and conclusive against him, and he cannot afterwards be permitted to retract or repudiate them. 1 *Greenl. on Ev.*, § 207 ; 2 *Greenl. on Ev.*, § 662.

"Its vital principle is the *animus dedicandi,* and whenever that is manifested, the dedication, so far as the owner of the fee is concerned, is complete, and he is concluded from his power of retraction, without acceptance by the public authorities or public user—acceptance being essential only

where the question is whether the public authorities are chargeable with reparation." *Trustees of Methodist Church* v. *Hoboken,* 4 *Vroom* 13.

Time is not an essential ingredient in the act of dedication; where it rests upon express declaration or act, it takes effect instantaneously; but it is a material element in the evidence of dedication, where it rests upon user under the acquiescence of the owner of the fee. It is in all cases a question of intention, and must be proved or disproved by the acts of the owner, and the circumstances under which the use has been permitted. In the numberless cases on this subject, search has been made for the intention to dedicate, and wherever that has been found to exist, the dedication has been declared to be complete, upon acceptance by the public, which, in this state, is not essential to conclude the donor. It is therefore a mixed question of law and fact, to be found by the jury under the direction of the court, upon consideration of all the circumstances of the case.

The length of time necessary to raise a presumption of dedication from user must depend upon the circumstances of each particular case; no absolute rule can be laid down to govern it; but where the only evidence of dedication is user by the public, unaccompanied by any circumstance or act indicating an intention to dedicate, or where the public or individuals have not acted upon the acquiescence in such a way that its retraction would materially affect the public accommodation and private rights, and thus evince bad faith in the owner, the weight of authority is, that such user, from anology to the statute of limitations, must be for twenty years, to establish the public right. This view of the law is supported by the authorities, and will reconcile a mass of cases in which the courts have spoken of time with reference to the particular facts of the case before them. *Smith* v. *State,* 3 *Zab.* 130; *Holmes* v. *Jersey City,* 1 *Beas.* 299; *Methodist Church* v. *Hoboken,* 4 *Vroom* 13; 2 *Smith's Lead. Cas.* 208; *Washburn on Easements* 140; *Angell on Highways,* § 143; *Cincinnati* v. *White,* 6 *Peters* 430; *State* v.

*Wilkinson,* 2 *Verm.* 480; *The Central Railroad* ads. *The State,* 3 *Vroom* 220; 1 *Zab.* 134; *Hoole* v. *Attorney-General,* 22 *Ala.* 190; *State* v. *Snediker,* 1 *Vroom* 80; *Jersey City* v. *Morris Canal,* 1 *Beas.* 547; *Irwin* v. *Dixion,* 9 *How. U. S. Rep.* 10; *Trustees of Watertown* v. *Cowen,* 4 *Paige* 510.

The right of the public accrues by such acquiescence as carries with it the intention of the owner to subject his fee to the public use; and mere acquiescence for twenty years, unaccompanied by any act which repels the presumption of such intention, is conclusive evidence of abandonment to the public. It must be a use by the public of the neighborhood, not a use confined to one or two individuals. By such individual use, if adverse, title to a right of way may be acquired by the individual, but no right in the public can be founded upon it.

The theory of the law is, where proof of devotion rests upon user, that the essential intention existed at the beginning of the use, and continued through the whole period necessary to evince a conclusive dereliction, and thus the user for the whole time of limitation must necessarily be of right; therefore, user by mere license, which is subject at any time to revocation, will afford no foundation from which to presume the gift. It was insisted on the argument, and some of the cases support the insistment, that the judge at the circuit erred in charging "that the user by the public must be of right for the whole period, and not by permission;" that it is a contradiction in terms to say that a gift rests upon adverse user—that it would be an unwilling intention, an extorted gift. This criticism would be just if applied to user before any intention to dedicate, but the presumption being that the intention existed at the beginning of the use, the public use is thenceforth of right, and adverse to the owner—in other words, as soon as the vital intention exists, the public no longer use it by assent or acquiescence of the donor, but of right.

In *Odiorne* v. *Wade,* 5 *Pick.* 421, the existence of the

highway was put upon the doctrine of prescription; and in *Reed* v. *Northfield*, 13 *Pick.* 94, Chief Justice Shaw held that the presumption from long and uninterrupted enjoyment would conclusively arise, that at some anterior period the road had been laid out and established by competent authority. In the later case of *Hobbs* v. *Lowell*, 19 *Pick.* 405, the same learned judge, following the lead of *Cincinnati* v. *White*, 6 *Peters* 430, which has been very generally adopted, rested the public right upon the doctrine of dedication. It seems to be a mere difference in name, and of no practical importance, whether the mode in which the right is acquired is called prescription, adverse possession, or dedication, although the latter term distinctly defines the right, and its universal adoption would save the confusion which arises from the use of other terms.

The proper construction of the nineteenth section of the act concerning roads was much discussed on the argument by counsel; but as the plaintiff failed to show that the freeholders had laid out the road in question under that section, he can have no aid from that source.

The evidence in this case satisfies me that the roadway was constructed in 1808, by Major Hurd, the then owner of the land, for the use of his own estate, was kept within his own enclosure by means of several pairs of bars, and worked and repaired exclusively by himself. Nichols testifies that up to the time he left the employ of Major Hurd, which was in 1817, he saw no one travel the road with a wagon, except those who were in Hurd's employ. There was some travel on foot and horseback, but no use by wagons is proved prior to 1816 or 1817. The planks were frequently removed from a bridge on the road about the year 1830, and, for several years following, the roadway was ploughed up by the owner of the soil.

In 1844, Dennis Duffy asked leave of Hurd to use the road, and obtained from him a license for a limited time, and subsequent to that date, in 1847, in 1850, and afterwards, the use of it was forbidden by the owner. During this whole

period, no act was done and no declaration was made by the owner of the fee from which an intention to dedicate can be drawn. These facts show that the user by neighbors was allowed in a spirit of accommodation and a forbearance to exclude them, and are not at all inconsistent with the fact indicated by the circumstances before mentioned, that the owner intended to retain absolute control over his estate. A jury could not fairly draw from them the intention to dedicate, which would be presumed from unexplained acquiescence in the public use.

The view here taken of the legal questions involved in this case substantially accords with that of the court below. What was said with reference to acceptance by the public could have had no effect upon the result, for where the alleged dedication, as in this case, rests wholly on user, the user would be an acceptance, and proof of user would necessarily carry with it proof of acceptance.

The case was fairly submitted to the jury, and it cannot be said that the verdict for the defendant has done any violence to the evidence.

The rule to show cause must be discharged.