IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW-JERSEY,

## AT APRIL TERM, 1850.

### PERRINE v. FARR.

1. Those allegations, only, in pleadings that are wholly foreign or irrelevant to the issue, and which need not to have been made at all, can be treated as surplusage.

2. A private road, laid out under the statute of this state, is not a private way, or right of way, which is a species of real property known to the common law, but is open to the use of all the public.

3. To justify under the proceedings of any special tribunal, its *past action* must be first shown; it cannot be presumed.

4. The authority of three chosen freeholders, as to opening by-roads, depends upon the fact, that there had existed before a by-road, used as such by the inhabitants: they have no power to determine that *there is* a by-road, but only to order it to be opened; and their authority can only be exercised where the obstruction is recent.

5. A private road, although open to the use of the public, is not a *public highway*, and therefore, not being within the exception in art. 1, § 13, of the constitution, private roads cannot now be laid out without providing compensation to the land owner.—*Per* GREEN, *C. J.*

Rule to show cause.

This was an action of trespass *quare clausum fregit*. To the declaration, in the usual form, the defendant pleaded several pleas, but it is only necessary to state shortly the fifth and sixth, upon which the defence rested. In these pleas the defendant

356

justified, because that the place where the trespasses were to have been committed, at and before, &c., was parcel of a certain by-road, then heretofore used, as such, by the inhabitants of the state, which had been shut up and rendered impassable, whereby the defendant, one of the inhabitants, had been put to immediate inconvenience and difficulty, &c. ; that he had applied in writing to three of the chosen freeholders of the county nearest to the said by-road, to lay out and open the said road, and that they did lay out and open the same, &c.

To these pleas the plaintiff replied *precludi non*, because, &c., that the said place, in which, &c., was not before, &c., a by-road, used as such by the inhabitants of this state, and rendered impassable, whereby the said inhabitants were put to immediate inconvenience and difficulty, &c.

The cause was tried at the Middlesex circuit, in December, 1847. It appeared, on the trial, that the plaintiff was the owner of one hundred acres of land, lying on the south side of a public road, in the township of South Brunswick, in said county. The defendant owned two hundred acres of wood land, lying immediately in the rear of the land of the plaintiff. Both tracts were formerly the property of one Mrs. Lott, being three hundred acres, set off to her by commissioners, as one of the heirs of her brother, John Wetherill, deceased, upon the partition of his real estate in 1823. Mrs. Lott and her husband conveyed to the plaintiff the land now owned by him, on 16th March, 1827, and to the defendant his land on the 23d April, 1828. After the plaintiff had purchased, in the progress of clearing and improving his land, he finally shut up the road in question, which was one of several wood roads crossing his premises, and leading to the wood land of the defendant and others in his rear. The defendant at length, in 1838 or 1839, called freeholders for the purpose of opening the road. The three chosen freeholders did not open it, as requested, but, it seems, attempted to lay out another road, twenty-five feet wide, on ground supposed to be more convenient to the plaintiff. Nothing further, however, was done under this proceeding, but the defendant subsequently procured surveyors to be appointed for the purpose of laying out a private road under the sta-

tute, which was done.　The proceedings of the surveyors, it is said, were set aside for irregularity, and then the defendant again, in 1844, made application in writing to three chosen freeholders to open and lay out the supposed by-road, which had been closed, alleging himself to be aggrieved and put to immediate inconvenience.　The freeholders met on 30th September, 1844, and ordered the road to be opened, making out and signing a formal certificate of their proceedings.　It is under these proceedings that the defendant sought to justify the taking down of the fence of the plaintiff, and passing over his premises.　The defendant owned another tract of land, adjoining that already referred to, as well as the premises of the plaintiff, by which he might have access to the public road, though by a way supposed to be less convenient than that across the plaintiff's land.

The judge directed the jury, that if the freeholders did lay out the road in question, and the act complained of was committed in opening that road under their order, that then their verdict should be for the defendant.　The jury found a verdict, under the fifth and sixth pleas, for the defendant, and the plaintiff subsequently obtained a rule to show cause why that verdict should not be set aside; which was argued before the CHIEF JUSTICE and Justices NEVIUS and CARPENTER.

*Blauvelt* and *Vroom*, for plaintiff.

The defendant attempts to justify under the action of the three freeholders, under whose sanction, he says, he entered and tore down the plaintiff's fence.　It is the party who here seeks to justify, not an officer acting under the writ or order of any tribunal, general or special.

The freeholders, under the act, (*Rev. Stat.* 522, § 19,) form a tribunal of very special and limited jurisdiction for a special and temporary purpose.　They can only act under a particular exigency.　They have no general jurisdiction over our by-roads, as assumed on the other side; if they do not act under the statute their proceedings are void. 6 *Co.* 76; 2 *Bin.* 209; *Willes* 30; *Ib.* 122; 4 *Vin.* 334, § 12; 3 *Cranch* 331; 15 *John.* 141; 19 *Ib.* 33; 2 *Stark. Ev.* 588 (*Phil. ed.* 1842).

Perrine v. Farr.

Those who justify under such tribunal must show the jurisdiction; the presumption is against it. 3 *Gr.* 57; 2 *Salk.* 522; 4 *Dal.* 8; 4 *Halst.* 20; 1 *Gr.* 308; 3 *Ib.* 341; 2 *Harr.* 25.

The statute will show what is necessary to support the jurisdiction. The party was bound to show a by-road *heretofore used;* that it had been shut up to the *immediate inconvenicnce* of some persons, and that application had been made, by some *one aggrieved,* to the freeholders *nearest* the place. These matters are essential to the jurisdiction, and must be shown in pleading and in evidence, according as the justification may be presented.

A certificate has been produced, and this, if competent, defective, and does not show all these particulars. But it is not authorized by the statute, and is not evidence at all.

The jurisdiction was not shown by parol evidence. No *by-road,* in the sense of the statute, was shown to have previously existed; mere temporary wood road, once opened by the previous owner of the whole tract for his own use, and long since closed. No recent inconvenience was shown; the road had been closed for thirteen or fourteen years. The authority of the freeholders was merely to open the former road at the *peril of the parties concerned;* they attempt, as shown by the certificate, to lay out a road, in part new, twenty feet wide. Besides, freeholders had been called years before, who had refused to open the road. The power was exhausted, and the application could not be renewed.

*Hageman* and *Field,* contra.

The case seems to present but one question, had the freeholders jurisdiction? Were those proceedings void or voidable? The best rule is that stated in *Case of the Marshalsea,* 10 *Co.* 76: wherever the court has jurisdiction over the subject matter the officer is not a trespasser, unless want of jurisdiction, as to the person or place, appears on the face of the proceedings. See 1 *Caines* 92; 8 *John.* 69; 3 *Wend.* 42; 11 *Ib.* 91.

There is jurisdiction over the subject matter in this case. The road had been shut up. It was the case provided for by the statute. However erroneous the judgment, it was in regard

to by-roads over which the jurisdiction, in this respect, extended.

It is not policy to declare these proceedings void. There are two remedies, an application to vacate and the writ of *certiorari*.

This was a by-road, a private or obscure road, existing in fact, and not because laid out by law. Opened by the freeholders, " it is to remain *as a private road.*"

It is said the by-road must be one recently shut up. Perhaps so, but the freeholders had jurisdiction to settle that question. There had been no acquiescence by Mr. Farr, on the contrary, a perpetual struggle.

THE CHIEF JUSTICE. To an action of trespass *quare clausum fregit*, the defendant pleaded, that the *locus in quo* was a by-road, heretofore used as such by the inhabitants of this state ; and that the said road, having been shut up and rendered impassable, whereby the defendant, one of the said inhabitants of this state, was put to immediate inconvenience and difficulty. Three of the chosen freeholders of the county of Middlesex, upon the application of the defendant, on the 30th of September, 1844, opened the said road. That the trespass complained of was the act of the defendant, in removing obstructions from the said road, and passing along the same, as he had a right to do. Upon this plea issue was joined.

On the trial, the plaintiff's counsel insisted that the act of the freeholders was null and void, there being no evidence to prove, that at the time the road was opened by the freeholders, there was a by-road there, " heretofore used as such by the inhabitants of the state," and which had been shut up and rendered impassable, whereby the inhabitants had been put to immediate inconvenience or difficulty. The judge charged the jury, that if they found that the freeholders did lay out the road in question, and that the act complained of was committed in removing obstructions from the road thus laid out, their verdict ought to be for the defendant.

The road is alleged to have been laid out by three freeholders, under the provisions of the thirteenth section of the act of

1818. *Rev. L.* 615. The propriety of the charge, if lawful, must rest on the assumed ground, that the only material averment in the plea is the fact, that the *locus in quo* was a private road, and that of that fact the action of the freeholders was conclusive evidence. It is very obvious that the learned and accurate counsel, by whom the pleadings in this cause were prepared, and the trial, on the part of the defendant, conducted, did not so regard it. On the contrary, he has, with great care and precision, spread upon the face of his plea every circumstance declared necessary by the statute to warrant the action of the freeholders, and on the trial he attempted to establish them by proof, but failed in so doing. Can those averments now be treated as wholly immaterial, and rejected as surplusage? If they cannot, then the defendant, by well settled rules, was bound to sustain them by proof, and, failing in this, he failed to support his plea. The rule is, that if the matter unnecessarily stated be wholly foreign and irrelevant to the issue, so that no allegation whatever on the subject was necessary, the averment will be rejected as surplusage, and need not be proved. 1 *Chity's Pl.* (7th ed.) 262, 580; *Steph. on Pl.* 419.

Could these averments be struck out, and the pleadings stand? That is the test question. *Gould's Pl.* 154, c. 3, § 170; *Chitty's Pl.* 263.

In the form of pleading adopted in this cause, it can scarcely be pretended that the averments in question can be struck out, and the plea be valid. The pleader has not contented himself simply by averring that the "*locus in quo*" was a private road. That fact is, indeed, not at all averred directly. But he has spread upon the face of his plea, in detail, those facts which the law had made essential to constitute a private road. In this form of pleading it is obvious that each of these facts is essential to the validity of the plea. No one fact can be treated as irrelevant or foreign to the issue, and must therefore be proved as laid in the plea. On this ground alone, if there were no other, I am of opinion that the charge was erroneous.

I regard the peculiar form of pleading in this case worthy of more attention, because it is in accordance with approved precedents, and therefore strongly indicative of the judgment

of the profession upon the true construction of the act now under consideration. If the construction of the statute, contended for by counsel upon the argument, be the true one, then the proceedings under it is simply one of the modes provided by the statute for laying out a private road ; and it would be sufficient, in pleading, simply to aver that the *locus in quo* was a private road, without stating upon the plea the particular mode in which the road was laid out.

It is material to observe, that private roads under our statute have no analogy to what are termed in law private ways, but are more analogous to the public highways or the common ways known to the common law. 2 *B. C.* 35.

A private road cannot be claimed by grant, prescription, necessity, or in any other mode in which title to a private way is acquired ; nor is the right, when it exists, a private right. It is neither a right vested in the applicant for the road, nor appurtenant to his land, but is essentially a public right. This will appear more clearly by a brief reference to the legislation upon this subject.

By the first section of the act of 1716, 1 *Nevill* 48, certain roads and highways, of six and four rods broad, are confirmed as common public roads and highways. By the third section, provision is made for laying out roads "from one town, or division, to another, or to any public landing or market, or mill, or from any town, to the king's highway." These roads are to be four rods broad. By the sixth section, provision is made for the laying out of roads, " upon the application of any person or persons, to the said person's plantation, or to any other plantation." These latter roads are to be one or two rods wide. They are to be cleared and maintained by the inhabitants who require them, and the owners of the land through which they pass may hang swinging gates upon them. These two sections constitute the germs of what are now denominated public and private roads. They will be found incorporated, with various modifications, in the act of 1760, sections three and twenty-one (2 *Nevill* 345); of 1774, sections 3 and 23 (*Allinson* 386); of 1794, sections 1 and 4 (*Pamph. Laws* 904); of 1799, sections 1 and 8 (*Pat.* 387); of 1818,

sections 1 and 4 (*Rev. Laws* 615), and of the existing law of 1846, sections 2 and 4 (*Rev. Stat.* 515). The distinction between the two classes of roads, usually denominated public and private, is coeval with the earliest legislation of the state upon the subject. But the term *private,* as applied to either, is of comparatively modern origin. They are, in fact, both *public* roads, so far as the *right* to use them is concerned. The act of 1716, which prescribes the mode of laying out both classes of roads, is entitled, " An act for the better laying out, regulating, and preserving *public roads* and highways." The acts of 1760 and of 1774 authorized the roads now called private to be laid out one or two rods wide, and enacted that all such roads of one rod wide only, should be cleared and maintained by the applicants, and if of two rods wide, to be maintained as other *public roads* are; and all the said roads of one or two rods wide shall be deemed lawful roads; and any person who shall stop or lessen the same, are declared subject to all the penalties prescribed for lessening and stopping the public highways. The term *private road* first occurs in the act of 1794, and appears to have been introduced as a convenient and brief mode of designating the class of roads laid out on the application of one or more individuals, for the accommodation of their lands. But the *name* did not alter the essential character of the *thing.* The land was taken, and the road opened, not for the applicants alone, but for the public, and every inhabitant had a right to use it. The twelfth section of the act in question (*Rev. Laws* 620) enacts, that every private road shall be cleared, worked, repaired, and maintained by the applicants and such other persons as commonly make use of the same, or, in case of neglect, it shall be lawful for any person who may have occasion to use the road, to clear, work, and maintain the same. The land, when taken, is dedicated, not to private, but to public use. By what right, indeed, could the legislature have taken the land of A. and appropriated it to the private use of B. ?

Private roads must be laid out on the application of an individual, for the more immediate benefit of his own property : they are not to exceed thirty feet in width ; they are to

be opened, worked, and maintained not at the public expense, but by the persons having occasion to use them, they may be encumbered with swinging gates. In these respects they differ from public roads. But like public roads, they are open to public use. The right to use them rests precisely upon the same foundation, the law of the legislature and the action of the public functionaries authorized to lay them out. The use of a private road is not acquired as a private right, nor should it be pleaded as a private right of way. It should be pleaded in the same manner as the right to use a *public* road is pleaded.

If this view be correct, it would seem that the only proper mode of pleading would be analogous to that adopted in the case of a public highway. An averment of the fact, that the *locus in quo* was part of a private road, would be sufficient. The particular mode in which the road was laid out can, upon principle, be no more material in the case of a private, than of a public road ; and if the mere action of the freeholders is all that is necessary to constitute a private road under the thirteenth section of the act, as is now contended by the defendant, it can be no more necessary to aver, in pleading, the statute by which that road is laid out, than if it were laid out by surveyors in the mode pointed out in the fourth section of the act. The mode of pleading, therefore, adopted, not only in this case but in other cases under the section in question, is strong evidence of what the pleader regarded as the true construction of the act.

The principal question discussed upon the argument was, whether the evidence in the cause, aside from any technical point arising out of the pleadings, proved the existence of a private way over the premises in question ? This presents the simple inquiry, whether the proceedings of freeholders, laying out or opening a road under the thirteenth section of the act, do of themselves, independently of any other proof, establish the existence of a private road ?

It was insisted, on the part of the plaintiff, that the action of the freeholders was unauthorized, because there was no evidence showing that the road in question was used as a by-road before the 19th of February, 1818, when the act was passed,

and that it could not therefore have been, in the language of the act, *heretofore* used as such by the inhabitants of this state. The term " heretofore" has reference not to the date of the passage of the act, but to the time of opening the road. This is obvious, by reference to the section, as originally enacted, in the act of 1794 (*Pamph. Laws* 904). It there reads as follows : " When any person shall shut up, or otherwise prevent the use of any by-road, heretofore accustomed to be used by the inhabitants of this state, although not laid out agreeably to the directions of *this* or the before recited act," &c. It is plain that, in this section, the term " *heretofore* " cannot refer to the time of the passage of the act, because at that time no road could, by possibility, have been laid out agreeably to the directions of the act. It must, of necessity, be referred to some future period, which could only be the time of opening the road.

The same phrase, *heretofore*, occurs in the twenty-eighth section of the act of 1818, and it has been held, in that connection, to refer not to the time of the passage of the law, but to the time of the doing of the act prohibited. *State* v. *Stites*, 1 *Green* 176.

The question is not whether the proceedings of the freeholders were irregular, but whether they were void for want of jurisdiction. Jurisdiction is power. A question of jurisdiction is a question of power ; and the question is, whether, upon the evidence in the case, it appears that the freeholders had power, under the statute, to lay out the road in question.

The freeholders exercised a special statutory authority of the most limited kind. They had no general power of laying out roads, whenever and wherever they saw fit ; but they are empowered to act only in a given case, under special designated circumstances. If those circumstances do not exist they have no jurisdiction. They have no power to lay out a *new* road, but to remove obstructions from an *old* one, and that must be a road " heretofore " used as such ; and it must have been shut up, to the *immediate* inconvenience and difficulty of the inhabitants. This language is used as a limitation of the power of the freeholders, in regard to which they can exercise no discretion.

No principle is better settled, than that an officer exercising special statutory authority, or a tribunal of limited jurisdiction, must *show* its authority. If the case is not shown to be within the jurisdiction, it is presumed to be without it.

The person relying upon the acts of such tribunal as a justification, must aver and prove all circumstances necessary to give jurisdiction. It was so understood by the pleader in this cause, and the facts are all properly averred. But the jury were instructed that these facts need not be proved, but that the mere fact that the freeholders had *exercised* the power, was conclusive proof that they had the power. The whole error of the argument, on the part of the defendant, consists in assuming that the freeholders had jurisdiction of the *subject matter* of laying out the road; but whether it was to be exercised or not, depended upon the question, whether, in their opinion, the road had previously been used, and had been shut up, to the immediate inconvenience of the inhabitants; whereas the fact of the road having been heretofore used, and its being shut up, to the immediate injury of the inhabitants, were the very facts upon which depended the power of the freeholders to act in the premises. The decision of the freeholders upon that point was of no avail. They are not to construe the limitation of their own powers. *Jurisdiction* must be shown by evidence, independent of the action of the tribunal itself. If it had appeared in evidence that there never had been a road upon the spot where the present road is opened, it could scarcely be contended that the proceedings of the freeholders were not void. The case is not materially altered by proof that a road had once existed, but that it had been shut up for at least ten years, and, at the time of the action of the freeholders, was enclosed and cultivated. The whole section shows clearly that the freeholders are to open an existing road which is closed or obstructed, not to relay a road, every trace of which is extinct.

If there existed a doubt as to the true construction of the act, I am of opinion that no such conclusive effect, as is contended for, should be given to the act of the freeholders.

1. Because the whole frame and policy of the act forbids

such a construction. The legislature had, in previous sections, provided the mode in which private roads should be laid out. The surveyors are to be selected by the court, upon due notice of the application. The court are to reject, in their discretion, all persons interested, or who for other cause ought not to be appointed. Notice must be given of the time and place of the meeting of the surveyors, that the landholder may have an opportunity of being heard. The route of the road is to be accurately surveyed, mapped, returned, and recorded. If the landholder is dissatisfied, he may have the decision reviewed by another tribunal. The rights of the landholder are cautiously guarded, and the courts have construed these provisions most strictly in his favor.

And yet, upon the construction now sought to be given to the thirteenth section of the act, all these safeguards are entirely disregarded, and the rights of the landholder exposed to destruction without the possibility of redress.

The freeholders who are to open the road are designated by law; they may be directly interested in the application, or under the influence of the applicants, or hostile to the landholder. They meet at the instance of the applicants, and may act exclusively upon *ex parte* representations. They take no oath to act impartially; no notice of the time and place of meeting is required to be given. The landholder has no opportunity of being heard and no right of review. No survey or map of the road is required to be made; no record of the proceedings to be kept or recorded. There is nothing in the character of the proceeding to invest it with the dignity of a judicial investigation or of a fair and impartial trial. Its inevitable effect would be to deprive the landholder of his property without a trial, and to conclude his rights without an opportunity of a hearing or the possibility of redress. Such construction ought not to be given to the statute, except upon the clearest rule of construction.

But the evil designed to be remedied requires no such construction. A method had been provided by law for laying out private roads. The evil to be remedied by this provision was the shutting up of by-roads already opened, though not laid

out agreeably to law, by which the inhabitants were put to immediate inconvenience and difficulty. Such an evil, it is obvious, demanded a prompt and immediate remedy. It brooked no delay. The object was not to lay out a road, in the proper sense of the term, but to open a road already in use. At the time of the original adoption of this provision there were in this state many by-roads, extending from plantation to plantation, which had never been laid out agreeably to law. Public roads were comparatively rare. As the country became settled, many dwellings were erected remote from public highways, and resort was had to by-roads, extending over adjoining plantations, for the convenience of the inhabitants. But in many cases these roads were permissive merely. They had not ripened into right. In such a state of things there was an obvious propriety in guarding against the difficulty and inconvenience which must have arisen from the shutting up of these roads. The object of the provision, it is obvious, would however be fully accomplished simply by removing the obstruction, and leaving the landholder to his action for damages, or, at the utmost, by permitting the action of the freeholders to consummate a right otherwise imperfect.

Although the act has now been in operation more than half a century, and its aid repeatedly invoked, no such efficacy, as is now imputed to the act of the freeholders, has ever before been held to exist. It has more than once been held otherwise at the circuits. In the case of *Black* v. *Pullen*, tried at the Burlington circuit, at May term, 1837, upon an issue similar to the present, Justice Ryerson charged the jury, that "the defendant could not justify under the act of the freeholders; unless he showed a right of way independent of the act of the freeholders, he had no right at all."

A decisive consideration against the construction contended for is, that it will render the section unconstitutional. By the 16th clause, art. 1, of the constitution, it is provided, that "private property shall not be taken for public use without just compensation, but land may be taken for public highways, as heretofore, until the legislature shall direct compensation to be made." A private road, though taken for public use, is not a

*public highway.* The phrase in the constitution must be construed according to its well known settled signification. A private road is not, either in its legal sense or popular signification, a public highway. Under the present constitution, land cannot be taken for a private road without just compensation to the owner. To permit the action of the freeholders to operate *per se*, as a laying out of the road, would be a direct and palpable infringement of the constitution. It would be taking private property for public use without compensation. The road in question was laid out by the freeholders after the present constitution went into operation, and if its operation is to give the defendant a *right* to the use of the plaintiff's property, it is unconstitutional and void.

I think the verdict should be set aside, and a new trial granted.

CARPENTER, J. The defendant attempts to justify the alleged trespass in passing across the premises, and pulling down the fence of the plaintiff, in order to open a passage for his wagons and horses, under the action of three chosen freeholders, and the opening of a by-road by them, upon his application. The statute provides, " that if any by-road, heretofore used as such by the inhabitants of this state, although not laid out agreeably to law, shall be shut up or rendered impassable, whereby the said inhabitants may be put to immediate inconvenience or difficulty, then any person so aggrieved may apply in writing to three of the chosen freeholders of the county nearest the road, and the said freeholders are hereby authorized to lay out the same, which shall remain as a private road, until it be vacated or altered, as in the manner directed in the fourth section of this act." *Rev. Stat.* 522, § 19. The three freeholders who were called by the defendant, ordered the road which had been shut up to be opened, and made a formal certificate in writing of their proceedings. The act evidently contemplates a more summary proceeding in cases where the shutting up of a by-road puts persons who have been accustomed to use it, to immediate and serious inconvenience. It authorizes no record to be made of such pro-

ceeding, and the certificate may therefore be laid out of the question, which in no case could serve any purpose, unless as it might be used as a memorandum to refresh the minds of the freeholders when called as witnesses. It may be proper to add, that it appears, from this certificate, that these freeholders so far mistook their authority as not merely to lay out or open this road, as it had previously been used, but one twenty-five feet in width, by courses and distances not exactly corresponding with the former by-road, thus, in fact, attempting to lay out a new road. The judge, on the trial, treated the proceedings of these freeholders as the judgment of a special tribunal erected for the particular case and conclusive, and the main question on this motion is, whether he was right in this direction.

The proposition of the defendant's counsel is unquestionably correct, that where the matter adjudicated upon is within the jurisdiction of the court, but the want of jurisdiction is as to person or place, unless such defect appears on the face of the process, the officer who executes it is not a trespasser; though when the subject matter is not within the jurisdiction, there every thing done is void, and the officer may be treated as a trespasser. 10 *Co.* 76; *Hard.* 480; *Bul. N. P.* 82.

But it will be noticed that this is not the case of an officer relying, as a justification, upon the order or process of any tribunal, in regard to a matter within its jurisdiction. In most cases process regular on its face will be sufficient for the protection of the officer; and upon right reason, for it would be unreasonable to hold an officer answerable for executing process, which, as the minister of the court, he dare not disregard. This is not the case of the freeholders, who, within certain limits, would doubtless be exonerated from any responsibility, their action having been invoked by a proper and formal application under the statute. It is the case of the party by whom the proceeding was originated, and upon whose application the freeholders undertook to act in the premises. An officer has a protection that the party has not, and that whether the court from which the process issues is a court of general or limited jurisdiction. The same process which might be suffi-

cient for the protection of the officer may be void as to the party by whom it was issued, who, when he attempts to justify under it, must show the foundation on which it issued. So the party who relies upon the proceedings of an inferior tribunal must aver and prove that the subject matter arose within its jurisdiction, and this may be denied by the other party. *Bul. N. P.* 83 ; *Higginson* v. *Martin*, 2 *Mod.* 195 ; *Evans* v. *Munkley*, 4 *Taunt.* 48 ; *Andrews* v. *Maris*, 1 *Q. B.* 16 ; *Savacoor* v. *Boughton*, 5 *Wend.* 170 ; *Com. Dig., Pl.* 3, *M* 24 ; *Browne on Parties to Action* 269 (*Law Lib.*)

It was open then, upon these principles, for the plaintiff to deny in his replication any thing upon which the jurisdiction of the freeholders rested. The application was *ex parte* by the defendant. The statute requires no notice to the other party ; the proceeding is summary, in order to remedy an immediate and pressing inconvenience, and if the truth of the facts in the application, upon which the jurisdiction of the freeholders depends, be denied, the defendant must support his plea by proof, or his justification will fail.

But, in truth, the proceedings under this section are rather in the nature of a special authority vested in the chosen freeholders, upon the application of the party aggrieved, and hence the necessity of setting out the proceedings at length in the plea. When any *by-road heretofore used*, &c., *shall be shut up*, whereby any of the inhabitants of the state are put to *immediate inconvenience*, then any person aggrieved may call the freeholders, and the discretion vested in the freeholders seems to be to judge, in such case, whether the inconvenience is such as that the road ought to be summarily opened. It is not of course, because a by-road previously used has been closed, that therefore it must be opened, but having been recently closed, the freeholders in such case are to judge whether the inconvenience is so great to those by whom the road had been previously used, as that it ought to be opened, and remain open until other provision can be made for their necessity. The applicant acts under their order at his peril. If sued in trespass, he must aver and prove, so far as the averments

Merson et al. v. Hobensack.

in his plea are put in issue, the facts necessary to give jurisdiction.

A by-road is defined by Webster and Johnson to be à private, unfrequented, or obscure road. The word seems to be used in the statute in opposition to a private road laid out according to law, which latter may be for the use of a single adjoining proprietor. The difficulty in this case does not seem to be in the failure to show the previous evistence and use of such by-road, as is contemplated in the act; it is in the fact that the shutting up of road was not recent. It had been closed for several years before this application. It was not the exigency provided for when the freeholders were authorized to judge as to the *extent* of the inconvenience. It is not necessary to say how promptly the application must be made; but after such lapse of time as had occurred in the present instance, there can be no pretence to say that the inconvenience was immediate. The subject has been discussed before us without reference to the technical character of the pleadings, upon which, therefore, no opinion is now expressed. I am of the opinion that the verdict ought to be set aside, and a new trial granted.

NEVIUS, J., concurred in setting aside the verdict.

Rule absolute.

CITED in *Chambers* v. *Wambough,* 4 *Dutch.* 531; *State* v. *Morristown,* 4 *Vr.* 66; *State* v. *Jersey City,* 7 *Vr.* 192.