## JOHN M. STEVENS *vs.* NATHAN ALLEN.

1. An action was brought before a justice of the peace to recover a penalty of two dollars for leaving open a swinging gate on the plaintiff's premises. The defendant pleaded title, and an action was brought in the Supreme Court, according to the provisions of the 40th section of the "act constituting courts for the trial of small causes." The plaintiff declared for a penalty of two dollars for leaving open a swinging gate across a private road on his premises. The defendant pleaded that he was the owner of a close contiguous to and adjoining the land of the plaintiff in the declaration mentioned, and that he was entitled to a certain way across the plaintiff's land where the said way was situated, and that the said swinging gate was unlawfully erected across the said way, obstructing the road, and that he had a right to remove the obstruction; *held,* that as the pleas set up a way without stating whether it was a public or private way, and did not deny the existence of a private road, as stated in the declaration, they were defective, and were not a sufficient answer to the declaration.

2. The inducement and traverse must be adapted to each other, and if the traverse consists of issuable matter, the inducement must consist of the same matter though differently expressed.

3. The right to erect swinging gates across private and by-roads extends to all ways except such as come within the description of public roads.

On demurrer to pleas.

Argued before Justices OGDEN, HAINES, and VAN DYKE, at June Term, 1860.

*J. P. Bradley,* for plaintiff.

*G. H. Brown,* for defendant.

The opinion of the court was delivered by

OGDEN, J. It is provided in the 13th section of the act concerning roads, that it shall and may be lawful for the owner of any land over which a private or by-road may pass, to hang swinging gates in the said road; and if any person shall stake, shore, or leave open, or cut, break, pull down, or destroy any gate, he shall for every such offence forfeit two dollars, to be recovered by an action

of debt, with costs, &c., and shall also pay the damages which may be sustained thereby." The question raised by the issue in this case is, whether there are any private ways in New Jersey that are not subject to legislative control.

The plaintiff brought a suit before a justice of the peace against Allen for a penalty of two dollars for leaving open a swinging gate which he had erected on his land. The defendant pleaded title, and the present action was brought in this court under the provisions of the 40th section of the " act constituting courts for the trial of small causes."

The plaintiff declared for the penalty of two dollars, and set out that a private road existed across his premises, which were particularly described, and that he caused a swinging gate to be erected across the said private road, and that the defendant left the said gate open, contrary to the form of the act of the legislature of the state, entitled " an act concerning roads," whereby he had forfeited and become liable to pay the sum of two dollars, and whereby an action had accrued to him, the plaintiff, as prosecutor, to demand and have of him, the defendant, the said sum of two dollars.

The defendant put in two pleas, both of which are demurred to by the plaintiff. In the first plea he set out that he was in possession, as the owner in fee, of a close contiguous to and adjoining the land of the plaintiff in the declaration mentioned, and that he and all the former owners and occupants of it, from time whereof the memory of man is not to the contrary, have had and used, and of right ought to have had and used, and at the time when, &c., he ought to have and use, without obstruction, a certain way for himself and them to pass and repass from a certain public highway into, through, over and along the land of the plaintiff, in which the said way is situated, unto and into the close of the defendant and back, at all times of the year, at his and their free will and pleasure, with-

out obstruction; and that the swinging gate had been wrongfully and unlawfully erected, and was standing across the said way, obstructing the road, so that he could not then pass and repass without throwing open and leaving open the same, which he did to remove the said obstruction, as he lawfully might and could do for the cause alleged, concluding with an *absque hoc*, &c.

In the second plea the same character of way is set up, but it is claimed under a lost grant, executed on the 1st of January, 1821, from an alleged former owner of the premises of the plaintiff to the defendant. The first ground of demurrer was that the pleas are no answer to the declaration. They do not deny the existence of a private road, as stated in the declaration, but in the inducements they set up a way, without stating whether it be a public or private way, upon which the justification is placed. The plaintiff could not safely make an issue upon either plea, because such would be a departure in pleading, inasmuch as the matter stated as inducement might exist, and yet the place where the swinging gate was erected be a private road, as is averred in the declaration. The fact that the defendant and his grantors may have used a way across the plaintiff's close for a long time may have been true, and yet that way may have been a private road. "Where the inducement and traverse go to the same point the traverse follows as a necessary inference from the inducement, so that if either of them is true, the other must necessarily be so. Indeed the inducement and the traverse, when thus adapted to each other, (as they must be in order to be secure against a demurrer) assert substantially the same thing, though in different forms—the one being in the affirmative, the other in the negative. It is clear, therefore, when they are thus adapted to each other, that if the traverse consists of issuable matter, as it confessedly must, the inducement will, and must, of necessity, consist of similar matter, or rather of the same matter differently expressed." *Gould on Pleading* 414.

The issuable matter contained in these inducements may be with the defendant, and yet the gravamen of the plaintiff's complaint may be true, and be correctly stated in his declavation.

The pleas are substantially defective, as containing no sufficient answers to the count.

The important question which it was designed to have settled by this suit is, whether any private right of way can exist in New Jersey over the land of another which is beyond the protection against damages that the 13th section of the road act secures to the owner of the land over which a private or by-road may pass.

The legislature of this state recognizes three classes of ways; and in tracing down their enactments on the subject of roads from 1716 to the date of the approval of the present act concerning roads, they will be found to have treated only of those three classes, to wit, public roads, private roads, and by-roads. The two former can be created by proceedings under legislative regulations, while the latter is assumed to have been created by grant, or in some other mode in which title to a private way is acquired. A by-road is defined by Worcester to be "an unfrequented path, an obscure road." There is no mode for their creation pointed out in the statute. In the 19th section of the act it is provided that where a by-road, used as such by the inhabitants of the state, is shut up or rendered impassable, whereby the said inhabitants may be put to immediate inconvenience or difficulty, application may be made to three freeholders, who may lay out the same, and thereafter it shall remain as a private road until vacated or altered according to law. In proceedings had under this section the by-way is changed into a *quasi* private road, and is made subject to the regulations which govern the use of private roads; and the right to use it rests, from that time, precisely upon the same foundation as does the right to use a public highway or a private road, to wit, the law of the legislature and the action of the public functionaries autorized to lay it out.

The privilege of placing swinging gates over private roads is of early origin ; but the first enactment which brought by-roads within the same regulation took place in January, 1833. The legislature, in a supplement to the act concerning roads, then provided for the protection of the owners of land or meadow over which a private or by-road passed by enacting that they might erect and maintain bridges on all ditches and drains lying or running across said road, to be constructed with lifts, which should be considered and taken as swinging gates; and they established a penalty of two dollars upon all persons who should leave the gates drawn, or injure the same, or any part of the structure. In the third section of that act it is enacted that the 12th section of the act to which it is a supplement, authorizing the erection of swinging gates in private roads, is extended to all by-roads.

When the provision for opening by-roads was first adopted many ways existed throughout the state, extending from farm to farm and from public roads to dwellings and improvements remote from general thoroughfares, which were of great convenience to the inhabitants. In many cases they were permissive easements, the uses of which, however, became of value and importance to the people of the neighborhoods. The object of the provision was to prevent the landholders from depriving those who had been in the habit of using such by-roads of the future use of them by the erection of permanent obstacles across the path. It was not the design of the legislature to establish such ways as perpetual easements to be beyond their control, but it was simply to meet and remedy the immediate inconvenience and difficulty which the people might suffer from the arbitrary and sudden acts of the landholders over whose grounds they had been accustomed uninterruptedly to pass. By placing such by-roads thereafter in the class of private roads, they declared them to be subject to vacation or alteration in the manner that private roads created by the action of surveyors

of the highways were to be vacated or altered. If the legislature had power thus to change the character of by-roads, and to subject them to alteration, they certainly have the power to protect the land-owner over whose premises they may pass from unnecessary damages in the free use of the easement by others.

The only question then is, what did the legislature intend by the 13th section of the act? As already stated, the expression *all by-roads* is used in the first enactment on the subject, but in the revision in 1846 the word *all* is left out, not for the purpose of limiting the operation of the provision, but because the same generality of intention could be expressed without the use of the collective adjective. As the country became cleared up, and unenclosed forests were reduced to cultivation, it also became necessary that farmers should be secured in the use of their lands. Wherever a private road or a by-road traversed a plantation its whole length or breadth, it would be necessary that two lines of fences should be erected to protect the crops from the trespasses of cattle that might enter from the public highways or from an adjoining plantation. It was of no consequence to the land-owner whether the easement over his premises was called a private road or by-road or a private way. His exposure resulted from the existence of the servitude, and legislative aid was invoked to protect him in the enjoyment of his estate in a way which would create little or no material hindrance to the public. The section under consideration was doubtless intended for general operation, and I am of opinion that the language employed is sufficiently comprehensive to embrace all ways which do not come within the description of public roads, as distinguished in common parlance from private ways. The demurrer is well taken, and judgment should be entered in favor of the plaintiff.

AFFIRMED, 5 *Dutch.* 509.