THE MAYOR AND COUNCIL OF THE BOROUGH OF SEABRIGHT, DEFENDANTS IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY AND THE NEW JERSEY SOUTHERN RAILWAY COMPANY, PLAINTIFFS IN ERROR.

Argued December 5, 1905—Decided June 18, 1906.

1. A recorded return of a public road cannot be attacked in a collateral proceeding on the ground that no order of the Court of Common Pleas to record the same appears upon the minutes of the court, or upon the ground that the road was laid across the track of a railroad and within five hundred feet of another public road then crossing the same tracks.

2. A borough is not estopped from asserting a right for the public to use a road laid out across a railroad right of way merely because some officials of the borough—which officials had no right to vacate streets—had permitted the railroad company to enclose the highway or because such officials had intimated by their acts an intention to abandon that part of the highway.

On error to the Supreme Court. For opinion of that court on motion to enter judgment on the special verdict, see 43 *Vroom* 8.

For the plaintiffs in error, *George Holmes, William A. Barkalow* and *Charles H. Ivins.*

For the defendants in error, *William J. Leonard.*

The opinion of the court was delivered by

REED, J. This writ of error brings up a judgment entered upon a special verdict found by Mr. Justice Fort on a trial before him by consent without a jury.

The action is in ejectment brought by the borough of Seabright to recover possession of a piece of land enclosed by the Central Railroad Company of New Jersey, which land, it is asserted by the borough, is part of a street known as New street. This street was laid out by surveyors of the highways on December 28th, 1892. The road, as returned by the surveyors, crossed the right of way of the Central Railroad Company. By some arrangement with the officials of the borough, New street, as physically opened, stopped on one side and began again on the other side of the right of way of the Central Railroad Company. Running along both sides of the right of way itself were streets, one known as Ocean avenue and the other as East Ocean avenue.

In the year 1893 the railroad company built fences through the borough, which fences separated its right of way from Ocean avenue and from East Ocean avenue.

The borough also curbed the two streets on the sides adjoining the right of way. These fences and the curbing intercepted travel on New street over the right of way, and this condition of affairs has continued from 1893 until the present time.

The first of the assigned errors discussed by the counsel for the plaintiffs in error is that there was error in the finding by the trial justice that New street was regularly laid out over the *locus in quo* by the surveyors of the highway, and

the finding that the return of the surveyors was duly recorded by the Court of Common Pleas of Monmouth county. The insistence is that the action of the surveyors and the record of their return are void and that there should have been a nonsuit directed by the trial justice upon that ground.

The principal point of attack upon the validity of the return of the road is that at the time New street was laid out there existed, within one hundred and thirty-two feet north of its place of crossing the defendants' tracks, another street, known as Church street, and that to the south, within two hundred and thirty-seven feet of the New street crossing, there existed another street called Ocean avenue, and that these two streets paralleled the proposed new street.

In view of these alleged facts the plaintiffs in error invoke the provisions of an act relative to railroad crossings and to prevent accidents, approved March 25th, 1881. *Gen. Stat., p.* 2933, § 540. This act provides that "when any public road crosses the roadbed and tracks of any railroad company in this state it shall not be lawful for the surveyors of highways, or other body having power to lay out or vacate public roads, to lay out or locate a public road across such railroad and tracks within a distance of five hundred feet of such other public road or crossing."

The question presented is whether, in this collateral attack upon the validity of the return of the surveyors laying out New street, the existence of the parallel public roads crossing defendants' tracks at the time New street was laid out are facts open to litigation.

The well-known course of procedure in laying out a public road is an application to the Court of Common Pleas by the requisite number of freeholders; the appointment of six surveyors; the return of those surveyors delivered to one of the applicants for the road, and the delivery or transmission by such applicant of the return to the clerk of the Court of Common Pleas within fifteen days from the date of the return.

The act provides that any person aggrieved may file a caveat with the clerk within the fifteen days against record-

ing the return, and that "if no caveat shall have been entered
* * * the proceedings of the surveyors shall be deemed
valid and effectual, and the clerk shall, by order of the court,
record the same; and every road so laid out and recorded
shall be a lawful highway from the time appointed for the
opening of the same."

The return thus being made and recorded by the Court of
Common Pleas (that court having general jurisdiction over
the subject-matter of laying out roads and recording re-
turns), the uniform course of decision has been that the
record of return is not a subject for collateral attack.

In the case of *Frame* v. *Boyd,* 6 *Vroom* 457, it was held
that the return of a road, even before recording, was a judicial
record of the Court of Common Pleas, and when lost could
be established by evidence of its contents, and thereupon a
copy thereof could be recorded.

In the case of *State, Bodine, pros.,* v. *Common Council of
Trenton,* 7 *Vroom* 198, the return of a road was marked filed
by the clerk at a date later than the fifteen days after the
date of the return. Although the sixth section of the Road
act declares a return not filed within the period of fifteen
days to be void, yet the Supreme Court refused to consider
this objection to the validity of a recorded return, and re-
fused on the ground that the Court of Common Pleas was a
court of general jurisdiction with power over the subject-
matter, and that it must be presumed that the court passed
upon the question whether the filing was within the time fixed
by the statute.

In *Humphreys* v. *Woodstown,* 19 *Vroom* 588, 592, it was
objected that the papers on file did not show that advertise-
ment of the meeting of the surveyors had been set up, or that
the surveyor who failed to sign the return was present at the
meeting or had notice of it. The Court of Errors and Ap-
peals, however, held that this question could not be raised
in a collateral proceeding. The language of Mr. Justice
Parker in so holding was this: "The Court of Common
Pleas had at that time jurisdiction over the subject-matter,
and the recorded return cannot be attacked collaterally. At

this distance of time, upon the production of proof of a road return, the court will presume that whatever was necessary to make the return valid was done, and the party will not be permitted to go behind the return to question the proceedings."

The plaintiffs in error insist that these cases are not controlling, because they are instances of error in procedure merely, while in the present case the error is jurisdictional. It would seem, however, that laying out a road within the prohibited distance of another road is as much an error of procedure as would be the laying out of a road in the absence of notification to those interested or in the absence of any other material requirement in procedure.

If the action of the surveyors is to be treated as that of a limited statutory tribunal, such action might be liable to collateral attack upon any of these grounds. But regarding the return as a record of a court of general jurisdiction, it must be presumed that every fact was found that was essential to confer jurisdiction.

The existence or non-existence of these parallel roads within the prescribed distance was a fact to be passed upon directly, and the presumed finding of the court is in favor of the legality of the return. Not having been directly challenged by *certiorari* or otherwise, the presumption remains that the return is valid in respect to this, as well as to all other objections.

It is also insisted that no order is to be found upon the minutes or records of the Court of Common Pleas of Monmouth county ordering the return of New street to be recorded, but the duty of the court was to order it to be recorded in case no caveat was filed within fifteen days, and the existence of the recorded return raises the presumption that the court did its duty.

We find no error in the finding of the trial justice that New street was regularly laid out and included the *locus in quo.*

The second alleged error discussed is that the trial justice erred in not finding, as a matter of fact and law, that the

plaintiffs were estopped from ejecting the defendants from the *locus in quo.*

The trial justice found, as facts, that some time in the fall of 1892 an agreement was entered into between certain borough officials and the railroad company that if the railroad company would fence their tracks the borough would do the curbing of the highway paralleling the track; that the railroad company paid for the fence and the borough paid for the curbing; that the curbing was actually laid across the place where New street was laid out; that the curbing was done by officers of the borough before the fence was erected, thus closing the street; that subsequently some of the curbing at New street was taken up, but was relaid under the direction of the president of the council.

The trial justice found that Ocean avenue and East Ocean avenue were streets opened up and worked by the borough and used by the public on each side of the right of way of the railroad company, through the whole length of the borough of Seabright, and that New street, as laid out by the surveyors, was opened, on one side, west from Ocean avenue to the river, and, on the other side, east from Ocean avenue to the ocean, but was never opened across the railroad right of way, the *locus in quo* in this action. From these and the other facts already stated it is insisted that the trial justice should have found that the mayor and common council of the borough of Seabright were estopped from now claiming that there is a public easement over the *locus in quo.*

The alleged estoppel, as is perceived, rests upon the permission given by some of the borough officials of Seabright to the Central Railroad Company to enclose a part of the laid-out street, and upon the act of some borough official in indicating by placing curbing and replacing the same across the street that the use of the *locus in quo* as a highway was abandoned.

It is to be remarked, in the first place, that even if it is conceded that these officers of the borough had the ability to bargain away the rights of the public in this street, or by their conduct to preclude the representatives of the public

from thereafter asserting the public rights in the highway, yet it is quite clear that there is nothing in the facts proved which compels the inference that the arrangment between the borough and the railroad company was to be regarded as permanent.

It might well be that in 1893 the size of the borough and the volume of travel upon the streets were such that it was not deemed worth while to then open and use this portion of New street.

It would, however, be drawing a strained conclusion to hold that the conduct of the borough officials conclusively established a perpetual right in the railroad company to bar the public from the use of this strip of land, no matter what changed conditions should thereafter arise.

But, apart from this view, there is a radical fault underlying the claim of an estoppel against the plaintiffs as representatives of the public. This defect exists in the shape of an entire absence of power in the borough officials, either by contract or conduct, to confer rights upon anyone to enclose against the public a public highway.

It is entirely settled in this state that no enclosure of a public street, however long, will bar the right of the municipal authorities who represent the public from asserting the public right in the enclosed portion of the street. *Price* v. *Plainfield,* 11 *Vroom* 608, 614, and cases there cited.

Nor can the officers of a municipality, save when empowered by the legislature, abandon or release the right of the public in a street or highway.

In *Hoboken Land and Improvement Co.* v. *City of Hoboken,* 7 *Vroom* 540, 549, it was insisted that the common council of Hoboken had by an ordinance abandoned the public easement in a portion of a street. The court held, however, that the ordinance did not admit of that construction. Then Mr. Justice Depue, speaking for this court, proceeded to say: "But if the ordinance admits of a different construction, a conclusive answer to this position lies in the fact that the municipal authorities have no power to discharge the public right. The easement is vested in the public. The local cor-

porate authorities, by the city charter, are empowered to open, work, amend and repair streets. Incident to that is the discretion when and how a street should be improved for public use and the power to bring suits to assert and protect the public right; but they cannot release or discharge the public rights unless authorized to do so by legislative authority, or apply the lands to a purpose different from the use for which the dedication was made."

Mr. Justice Magie, speaking of this power to release the public right in a street, in *Domestic Telegraph Co. v. Newark*, 20 *Vroom* 344, remarked: "From the earliest history of the state authority to vacate highways in county districts has been conferred upon special tribunals. Like authority has been frequently conferred upon municipalities. No reason appears why all such authority possessed by the legislature may not be thus delegated; but the delegation of such power must plainly appear, either by express grant or necessary implication."

In the present instance it does not appear that any proceeding was ever taken to vacate the highway across the *locus in quo*. So far as appears, the borough authorities whose acts or acquiescence is relied upon to support the alleged estoppel, did not possess a shred of authority to vacate or release any public right in the street. Indeed, what has been termed an estoppel in the course of the argument is merely an alleged abandonment of that portion of the street which those officials permitted the railroad company to enclose.

We find no error in the record, and the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRETSON, HENDRICKSON, PITNEY, REED, BOGERT, VREDENBURGH, VROOM, GRAY, DILL.   10.

*For reversal*—None.