CAMPBELL STORES, complainant-appellant,

*v.*

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, defendant-respondent.

[Submitted October 28th, 1933. Decided January 5th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:

"This is a suit to quiet title. The defendant, the city of Hoboken, argues that the court is without jurisdiction since the evidence does not disclose that complainant is in peaceable possession of the land. The bill sets forth that complainant has such possession. The answer does not expressly deny it, but alleges that whatever title complainant has is subject to an easement or privilege which the public have acquired for the purpose of passage and that the defendant, as representative of the public, has the power to regulate the use of the land and to keep it open to the public for passage thereover. The answer also sets forth that the land has been and now is a sidewalk and a part of Fourteenth street, Hoboken, continuously used by the defendant and by the public during the past thirty years.

"This court has jurisdiction to quiet the title to land, even though the land is not actually in the possession of complainant, provided possession is alleged by the bill and is not put in issue by the answer. It is too late at the hearing to question for the first time complainant's possession. *McClave* v. *Newark, 31 N. J. Eq. 472.* Every material allegation of fact in the bill of complaint which is not denied by the answer is deemed to be admitted. The statement in the answer that the land is a sidewalk and has been used as such for many years is not sufficient to put in question complainant's possession. It should be regarded rather as a specification of the estate claimed by defendant. I conclude that since complainant's possession is not denied, the court has jurisdiction of the question of title.

"The defendant argues that it is entitled to have the title determined by a jury. If defendant had made timely application, an issue of law would have been directed to try the title. But when all the evidence had been presented and the case comes on for argument, it is too late to ask for a jury trial.

"The paper title of complainant is not disputed. Defendant relies upon an implied dedication or upon adverse user. The facts are these: For many years prior to 1896, the Hoboken Land and Improvement Company (or some of its subsidiaries) owned all the land between the Hudson river and Hudson street and extending from what is now the southerly line of Fourteenth street, northerly for a quarter of a mile or so. At the foot of Fourteenth street it had built a ferry terminal which extended along the waterfront about one hundred and fifty feet, from the southerly line of Fourteenth street to a point about seventy-five feet north of the northerly line thereof, extended in a straight line to the river. The improvement company had also developed, for shipping purposes, the waterfront north of the ferry.

"In 1896, the company sold the ferry property together with a right-of-way over what is now Fourteenth street but not including the northerly sidewalk of that street. The same year, the improvement company conveyed to a street

railway company a triangular plot adjoining on the west the northerly end of the ferry property. The southerly side of this triangle abutted the ferry company's right-of-way, and the street railway company was given an easement for street cars in the same right-of-way. The conveyance to the street railway company reserved to the improvement company along the easterly base of the triangle a right-of-way from the piers at the north, running southerly to Fourteenth street.

"At this stage—after the two conveyances—the roadway of Fourteenth street may be regarded as a private way for the use of the improvement company, the ferry company and the trolley company and their respective invitees, running from Hudson street to the ferry property with a uniform width of about sixty feet. The northerly sidewalk—or the space used by pedestrians—ran adjacent to the roadway from Hudson street to the westerly end of the trolley company's triangle. Then it diverged to the left or north and reached the ferry property separated from the roadway by the triangle. It is this sidewalk, separated from the roadway, that is the subject of this suit. In 1896, no one had a legal interest in it except the improvement company. No one had a right to use it except that company and its invitees, namely, persons employed by or having business with the improvement company's tenants in the property lying on the north. But from 1896 to the present time, ferry passengers and employes, street railway passengers and employes, and others happening to be in the neighborhood, have freely used this footpath north of the triangle whenever they found it convenient to do so. The improvement company facilitated this user by leveling the path from time to time and placing cinders on it, and that company, in order to protect pedestrians, maintained a row of stout posts along the southerly edge of the path in order to keep trucks off of it, while at the same time permitting pedestrians easly to reach it.

"In 1908, the improvement company and the street railway company joined in dedicating to public use Fourteenth street between Hudson street and the ferry property. This dedication included not only the roadway and the sidewalk west of

the trolley triangle but a strip taken from the southerly side of the triangle which might be described as the sidewalk extended in a straight line toward the river. The dedication did not include the footpath north of the triangle. It does not appear from the evidence that the municipality ever formally accepted the dedication.

"Complainant has acquired the improvement company's title to a large tract north of Fourteenth street and north of the street railway triangle and including the sidewalk in question.

"Whether land has been dedicated to public use is a question of intention to be determined by the acts of the owner and the circumstances of the user. 'The right of the public accrues by such acquiescence as carries with it the intention of the owner to subject his fee to the public use; and mere acquiescence for twenty years unaccompanied by any act which repels the presumption of such intention, is conclusive evidence of abandonment to the public. It must be a use by the public of the neighborhood, not a use confined to one or two individuals.' *Wood* v. *Hurd, 34 N. J. Law 87; Riverside Township* v. *Pennsylvania Railroad Co., 74 N. J. Law 476.* Complainant urges that the sole users of the sidewalk, other than the owner's tenants and their invitees, have been the employes and customers of only two companies, and that such a limited use is not sufficient to establish a public way by prescription. *Olsen* v. *Erie Railroad Co., 99 N. J. Law 485.* Both the street railway company and the ferry company are common carriers; the use of this sidewalk by their passengers is a use by the general public. Also the evidence discloses that anyone who cared to walk along the footpath has been permitted freely to do so. In my opinion, the right of the public has been proved, unless some one of the matters now to be mentioned repels the presumption which normally arises from long continued acquiescence in the public use.

"In 1896, the improvement company leased to one Hauser a plot of land on the northerly side of Fourteenth street, including a part of the footpath. The term of the lease was fifteen years ending May 1st, 1911, within twenty years before

the filing of the bill. Complainant argues that the use of the footpath during the term of the lease was beyond the control of the owner and cannot show an intent to dedicate. *Morey* v. *Essex County, 94 N. J. Law 427*. The evidence indicates that despite the lease, the lessor retained uninterrupted control of the sidewalk. Mr. Edwin A. S. Brown, for many years an officer of the Hoboken Land and Improvement Company, mentioned in his testimony that this lease was surrendered to the improvement company; in what year, does not appear. I do not think this lease interfered with the accrual of the public easement.

"Complainant further argues that the express dedication in 1908, inasmuch as it did not include the questioned footpath, negatived the idea of an implied dedication thereof. I need not consider this question, as the express dedication was made more than twenty years ago, and sufficient time has since then elapsed to establish the right of the public in the footpath.

"Lastly, it appears that in 1926 complainant erected a fence across the footpath to prevent the public from using it. But the public tore down the fence within a few hours and complainant made no effort to rebuild it. This incident, if it proves anything, indicates that complainant acquiesced in the public user.

"A dedication for the purpose of pedestrian travel has been proved. I will advise a decree accordingly."

*Mr. Dougal Herr (William A. Kaufmann,* of counsel), for the complainant-appellant.

*Mr. Horace L. Allen,* for the defendant-respondent.

PER CURIAM.

The decree below will be affirmed, and, except for the following modifications, for the reasons stated in the opinion filed by the vice-chancellor.

The vice-chancellor, near the close of his opinion, speaks of the express dedication of 1908 and of the fence erected in 1926. We consider that the express dedication of other lands

in 1908, executed jointly by complainant's predecessor in title and the railway company, was, actually or potentially, an entirely different transaction from, and with no bearing upon, the use of the footpath and does not repel the presumption of an implied dedication. We further consider that the rights of the public in the sidewalk had become established prior to the erecting of the fence in 1926 and that therefore that erection has no legal effect upon the present controversy.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PAR-. KER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.   15.

*For reversal*—None.