14 N.J. Super. 180 (1951)
81 A.2d 513
TOWNSHIP OF LOWER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CLEMENT REEVES, SR., CLEMENT REEVES, JR., GALE REEVES, GEORGE REEVES AND LEROY REEVES, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 1, 1951.
*182 Mr. Nathan C. Staller for the plaintiff (Mr. T. Millet Hand, attorney).
Mr. George M. James for the defendants.
HANEMAN, J.S.C.
Plaintiff herein seeks a prohibitory injunction to enjoin the defendants from obstructing an alleged public highway and from preventing it from repairing and maintaining said highway. Plaintiff seeks as well a mandatory injunction to compel the defendants to place the highway in the condition in which it was prior to acts allegedly committed by the defendants or some of them, which destroyed a portion thereof.
The defendants generally deny that the road or lane in question is a public highway, and further seek, in any event, to establish an abandonment.
The primary question is whether the described land is a public highway. It is admitted by the parties hereto that if the roadway is a public highway, the same resulted from prescription, user or recognition. The basic principles applicable hereto are as follows:
A public highway may be established by prescription, user or recognition, or by dedication by the landowner, or by statute or direct public action to that end.
In Campbell Stores v. Hoboken, 115 N.J. Eq. 159 (E. & A. 1933), the court said as follows:
"`Whether land has been dedicated to public use is a question of intention to be determined by the acts of the owner and the circumstances of the user. "The right of the public accrues by such acquiescence as carries with it the intention of the owner to subject his fee to the public use; and mere acquiescence for twenty years unaccompanied by any act which repels the presumption of such *183 intention, is conclusive evidence of abandonment to the public. It must be a use by the public of the neighborhood, not a use confined to one or two individuals."'"
See also Township of Parsippany-Troy Hills v. Bowman, 3 N.J. 97 (1949); Prudden v. Lindsley, 29 N.J. Eq. 615 (E. & A. 1878); Wood v. Hurd, 34 N.J.L. 87 (Sup. Ct. 1869); Riverside v. Pennsylvania Railroad Co., 74 N.J.L. 476 (E. & A. 1906).
Once having been dedicated to the public use, the right of the public in the highway becomes irrevocable. The actual possession and dominion over such a highway may be suspended and lie dormant until such time as in the judgment of the proper local authorities the public exigencies require their possession and use. The Legislature alone has the power to release the dedicated lands and discharge the public, and the interest of the public in such highway may be lost only upon a formal vacation or abandonment by a duly constituted authority, in the mode and manner prescribed by the law. Hoboken Land and Improvement Co. v. Mayor, &c., of Hoboken, 36 N.J.L. 540 (E. & A. 1873); South Amboy v. N.Y. & L.B.R.R. Co., 66 N.J.L. 623 (E. & A. 1901); Seabright v. Central Railroad Co., 73 N.J.L. 625 (E. & A. 1905); Long Branch v. Toovey, 104 N.J.L. 335 (E. & A. 1927); Osterweil v. Newark, 116 N.J.L. 227 (E. & A. 1935); George Van Tassel's, etc., Inc., v. Town of Bloomfield, 8 N.J. Super. 524 (Ch. Div. 1950).
The mere fact some officials of the municipality in which the highway had been dedicated failed to bring proceedings for the removal of a gate which had been erected by the defendants or their predecessors in title, and which obstructed a part of the highway temporarily, did not estop the municipality from asserting a right for the public to the use of said highway. Nor can an intention to abandon be sustained by the proof of any such facts. Osterweil v. Newark, supra; Seabright v. Central Railroad Co., supra.
Without reciting in detail the testimony of the various witnesses, which has brought me to the conclusion at which *184 I have arrived, I feel that a recital of the highlights of the testimony will be sufficient for the purpose of these conclusions.
The road here in question is a continuation of an admitted public highway known as the Weeks Landing Road. The Weeks Landing Road extends from New Jersey Highway Route 4 to a landing on Jones Creek, a tide-flowed stream, commonly known as Weeks Landing. For upwards of 75 years Weeks Landing had been used by the citizens and inhabitants of Lower Township for the conduct of fishing, clamming, oystering and hunting. It had as well been used as a dock from which produce was shipped to Five Mile Beach, now known as Wildwood, until such time as a highway was constructed to connect Five Mile Beach with the mainland, so that the necessity for ferrying such produce no longer existed.
The portion of the so-called Weeks Landing Road now brought into question runs through what has been for many years locally known as the "Judge York" farm. There are lands on either side of the roadway originally owned by Judge York, and through mesne conveyances now vested in the defendants.
The portion of the Weeks Landing Road which is admittedly a public highway is hard-surfaced and runs directly to the farm here involved, and the roadway now brought into question, although unpaved, is a continuation thereof.
I am satisfied from the testimony of the witnesses, many of whom ranged in age from 70 to over 90 years, that for at least 50 years this highway has been continuously used as a public thoroughfare. I find as a fact that from at least 1872, being the date of a map entitled "Topographical Map of Cape May County, N.J., from recent and actual surveys under the direction of F.W. Beers, Published by Beers, Comstock & Cline, 36 Vesey Street, New York, 1872," the roadway has been regarded and recognized as a public highway, and that for upwards of 20 years after that date it had been so *185 regarded. In addition, the exhibited maps, entitled as follows:
U.S. Coast and Geodetic Survey, Coast of New Jersey from Cold Springs Inlet to Hereford Inlet. Surveyed by C.M. Bache, Assistant  1880.
Base map, Cape May County, N.J., prepared by the New Jersey State Highway Department in cooperation with the Federal Works Agency, Public Roads Administration. Data obtained from State-wide Highway Planning Survey, 1941.
Road Map, Lower Township, Cape May County, N.J., Township Committee  Randall Elliott, Chairman; Frank Dickinson and George Fontaine, January 1942. Morgan Hand, Twp. Engr.
State of New Jersey, Department of Conservation and Development. Atlas Sheet No. 37. Division of Geographic and Topographic. Henry B. Kummel, State Geologist. Original Survey 1884. Principal features revised XXXX-XXXX-XXXX. Edition of 1936.
Undated and untitled map. Referred to as blue and white print of the tracing of the original topographical survey of the State of New Jersey for Cape May County.
Map of Cape May County, New Jersey, copyright 1912, Morgan Hand, C.E.
the earliest of which was dated 1872, as above set forth, demonstrate that this roadway was regarded as a public highway, having been so delineated by the topographers of the respective maps. In addition, a reference to this road in a conveyance dated 1874 as "the road leading to Weeks Landing" as a call point, further shows that the road was so recognized in that year. There is no doubt in my mind, from the testimony of the several witnesses produced on behalf of the plaintiff, whose memories cover a great span of years, that this road was used by the public for fishing, clamming, crabbing, oystering and ferrying of produce to the coast. I am also impressed with the testimony of James Hawn, 92 years of age, who assisted Judge York in laying out the road here in controversy when he was a youth, that the latter stated, "We'll give them 35 feet."
Although the municipality had not undertaken extensive repairs and maintenance work on the roadway, I find that it had done such work at periodic intervals for upwards of 70 years.
*186 The defendants point to the fact that on several occasions a gate was placed at the point where the Weeks Landing Road enters their farm. I find as a fact, conceding for the sake of this opinion that such a gate was constructed at the earliest date alleged by the defendants, that the right of way had already been dedicated to the public as a public highway by adverse user. The fact that one or more of the prior owners of the farm had, in addition, constructed a fence or a hedgerow on either side of and parallel to the questioned roadway where it runs through defendants' lands, lends further weight to plaintiff's position and rebuts defendants' assertion that the gate was so placed as a matter of right at the entrance to a private way. If the gateway was constructed as is contended by the defendants, to prevent their cattle from straying on the highway, and the lane in question had not been recognized as a public highway, there would have been no need or necessity to construct a fence or plant a hedgerow on either side of the lane, the gate at the entrance thereto then being sufficient to accomplish that purpose. This is particularly so when it is realized that on either side of the road, where the highway enters the farm, there had also been in existence for many years a wire fence which was part of an enclosure which circumscribed the entire farm.
In any event, the construction of a swinging gate prior to 1918 is not inconsistent with plaintiff's contention that this was a public highway. The road in question was of such a nature as would in the earlier days of the history of this State have been designated a by-road or private road. Such roads were obscure or neighborhood roads, not used to any great extent by the public, yet were so far a public road that the public had of right free access to them at all times. Under the authority of Revision of 1877, page 1001 et seq., until the same was repealed by L. 1918, chapter 190, page 652, the defendants' predecessors in title had the right and authority to construct a swinging gate across such a road, although it was dedicated to the public. Such construction was not, of necessity, an act of dominion over the land under *187 claim of title. Wood v. Hurd, supra; Tarlucki v. West Jersey & S.R.R. Co., 82 N.J.L. 138 (Sup. Ct. 1911); Perrine v. Farr, 22 N.J.L. 356 (Sup. Ct. 1850); Speer v. Erie Railroad Co., 68 N.J. Eq. 615 (E. & A. 1904); Stevens v. Allen, 29 N.J.L. 68 (Sup. Ct. 1860), affirmed 29 N.J.L. 509 (E. & A. 1861).
The defendants have failed to adduce sufficient testimony to disturb the conclusion that there was such a user as would result in a dedication, nor does their evidence substantiate any asserted abandonment.
It is therefore here held that the roadway in question is a public highway.
Insofar as the width of a highway which is established by prescription is concerned, this must be determined by the extent of the user. Township of Parsippany-Troy Hills v. Bowman, supra (concurring opinion p. 107).
Although the evidence as to the width of the road used was somewhat contradictory, I am satisfied that it was used to the same width as the approaching hard-surfaced road, and so find as a fact.
Judgment will be entered consistent with the foregoing.