THE HOBOKEN LAND AND IMPROVEMENT COMPANY v. THE MAYOR AND COMMON COUNCIL OF .THE CITY OF HOBOKEN.

1. Ejectment will lie at the suit of an incorporated city, for lands dedicated to a public use for a street.
2. Acceptance of a dedicated street by a formal act or public user, is not essential to cut off the owner from the power of retraction, and subject the dedicated lands to the public use, when in the judgment of the local authorities the wants or convenience of the public require it for that purpose.
3. A street delineated on a dedicating map as extending to a public navigable river, will be continued to the new water front obtained by filling in by the owner, under legislative permission.
4. An ordinance of the municipal government adopting a part of a public street for present use, is not an abandonment of the rest of it.
5. The local corporate authorities have no power in the absence of legislative authority, to release the public right in a dedicated street.
6. Lapse of time, however long the public right in a street is suspended, though coupled with an user by the owner, which would otherwise be adverse, will not make title by prescription against the public.

7. The legislature alone has the power to release the dedicated lands and discharge the public servitude.

8. An act of the legislature incorporating a land and improvement company, and authorizing it to fill up, occupy, possess, and enjoy all land covered with water, fronting and adjoining lands that might be owned by the corporation, and to construct thereon wharves, piers, slips, and other structures for commercial and shipping purposes, will not extinguish the public right of access to the navigable waters by a street on land purchased by the company, which, by the dedication, terminated at the high-water line, as it was when the dedication was made; but the connection of the street with the navigable waters will be continued over lands reclaimed by filling in under such legislative permission.

9. The owner of lands on tide water, by a map filed in 1805, dedicated streets and squares to a public use. In 1838, the defendants were incorporated as a land and improvement company. In 1839, they acquired title in fee to the tract through which the dedicated streets were laid. By the charter, the company was authorized to fill up, occupy, possess, and enjoy all land covered with water, fronting and adjoining lands that might be owned by the corporation, and construct thereon wharves, &c., with proviso that it should not be lawful to fill in or construct any wharf, &c., immediately in front of lands of any other person owning to the water, without consent in writing. In the map of dedication, Fourth street was delineated as terminating at the water, and it was found by the jury that the dedication was to high water, as it was when the map was made. The company filled in a considerable distance beyond that line. In 1857, the city passed an ordinance that Fourth street should extend between certain limits short of the original line of high water. The defendants continued in possession of the rest of the street until this action was brought in 1870. In ejectment by the city for that part of the dedicated street—*Held*, that the street was, by operation of law, extended to the new water front obtained by filling in, and that the public right of access to the water had not been abandoned or lost by lapse of time, or released.

On error to the Supreme Court.

This was an action of ejectment. The case came on to trial at the Hudson Circuit, at the Term of October, 1871, before Justice Bedle and a jury. Several exceptions were taken during the trial of the cause, and the judgment of the Supreme Court was removed into this court by writ of error.

The facts of the case fully appear in the opinion of the court.

For the plaintiffs in error, *F. B. Ogden, I. W. Scudder* and *B. Williamson.*

For the defendants, *J. C. Besson* and *T. N. McCarter.*

The opinion of the court was delivered by

DEPUE, J.    The action in this case is in ejectment at the suit of the city, to recover a strip of land within the lines of Fourth street, in the city of Hoboken, between River street and the line of low water in the Hudson river, as it was when the suit was commenced.    A part of the land in dispute was land above the ancient high-water line, but the greater portion was such as had been reclaimed by the defendants from the tide waters of the river.

The tract of land on which the city has been built, was formerly the property of Col. John Stevens, and contained, originally, 564 acres.    In 1804, Col. Stevens caused to be made "a plan of the new city of Hoboken, in the county of Bergen," known as Loss' map, which was filed in the clerk's office of the county of Bergen, in April, 1805.    The testimony leaves no room for a doubt that a dedication was effected of the streets and squares delineated on this map.    Among the streets so delineated was Fourth street, which was laid westerly from and at a right angle with the river.    The jury found, as a question of fact, that Fourth street, as laid on Loss' map, extended to ordinary high water, as it was at the time the map was made.

The defendants were incorporated by an act passed on the 21st of February, 1838.    By the fourth section of the incorporating act, they were empowered to purchase, fill up, occupy, possess, and enjoy all land covered with water fronting and adjoining the lands that might be owned by them, and to construct thereon wharves, harbors, piers, and slips, and all other structures requisite or proper for commercial and shipping

purposes; provided, that it should not be lawful for the company to fill up any such land covered with water, nor to construct any dock, pier or wharf immediately in front of the lands of any other person owning down to the water, without the consent of such person first had in writing. *Acts* 1838, *p.* 95.

In May, 1839, the defendants, by a deed of conveyance, executed by Edwin A. Stevens and others, became the owners in fee of the entire tract, excepting such parts as had previously been conveyed by Col. Stevens in his lifetime, and by Edwin A. Stevens whilst he was the owner. Subsequent to this conveyance, the company under the powers in their charter, filled in, in front of and adjacent to the lines of the street, a considerable distance beyond the line of high water, as it existed when the Loss map was made.

The jury, under the charge of the court, awarded to the plaintiffs the strip of land within the lines of Fourth street from River street, and extended over the land acquired by reclamation between the old high water line and the new line of high water, obtained by the filling in.

A number of exceptions were taken at the circuit to the charge of the court, and the refusal to charge as requested. The exceptions are in substance comprised in the points hereinafter considered.

It was contended by the defendants' counsel that the plaintiffs had not such right or title to the premises as would enable them to maintain ejectment.

The action of ejectment is a possessory action. All that is involved in it is the right of possession, and the party, whether plaintiff or defendant, in whom is vested the right of possession, is entitled to succeed in the action, without regard to where the ultimate fee may be. On this principle in *Dummer* v. *Den, Spencer* 86, it was held that a municipal corporation might bring ejectment to recover a square situate within the corporate limits, which had been dedicated to that public use. In a later case, the plaintiffs in this action recovered in ejectment a public square in the city of Hoboken, which had

been dedicated by the same instrument of dedication which is in controversy in this cause. *Methodist Church* v. *City of Hoboken*, 4 *Vroom* 13. In the first of these cases the action was held to be appropriate on the ground that by force of an act of incorporation which gave to the municipal authorities the usual powers over streets, squares and public places, the rights of the public in common property became vested in the corporation. In the latter case, the broad doctrine was adopted that the right to maintain appropriate actions for the vindication of the public right in lands dedicated to a public use was lodged in the local public authorities. In neither of these cases had an ordinance appropriating the lands to the proposed public use, preceded the commencement of the action.

Where the public easement is such that possession, exclusive of any interference by the owner of the fee, is essential for its improvement, regulation and enjoyment, the only appropriate action to obtain the possession is ejectment. To deny this form of relief and remit the public to a remedy by indictment for a nuisance, would result in subjecting public rights in property to the varying moods of grand juries.

By the charter of the city, its municipal authorities are charged with duties in relation to opening streets and paving and putting them in condition for public use, and amending and repairing, which require a possession as exclusive as in cases of public squares. Whatever be the rule with respect to ordinary country highways, or as between the owner of the fee and a mere trespasser, it is entirely consistent with the principles on which the action of ejectment is founded that ejectment should lie at the suit of a municipal corporation to recover lands over which a street in law exists.

The Supreme Court of the United States has decided that a municipal corporation may defend ejectment at the suit of the owner of the fee, by setting up the right of possession in a street or common, under the rights acquired by the public in the dedication to a public use. *Barclay* v. *Howell's Lessees*, 6 *Peters* 498; *Cincinnati* v. *White*, 10 *Ib.* 631. The

rule is otherwise in case the servitude is a mere private easement. *Morgan* v. *Moore,* 3 *Gray* 319. If the right of possession under a public easement may be made a defence in ejectment, no reason can be advanced why it should not be also available to support an action to recover the possession.

No difficulties or embarrassments in the way of the prosecution of the suit will arise from that section of the practice act which gives to a judgment in ejectment a conclusive effect upon the right of possession. *Nix. Dig.* 744, § 77. The operation of that section is only upon the right of possession which existed at the termination of the suit, and it will not conclude the defeated party as to a right of possession subsequently accruing. Upon any other hypothesis, ejectment by a tenant for years, or any estate less than a fee against the reversioner, would become disused by force of this section, as the plaintiff, at the trial, could not show a right of possession co-extensive in duration with the ultimate fee. As between the parties to this suit, if the public use shall in the future be extinguished by competent authority, a right of possession will thereupon arise in the defendants from their title in fee, which will enable them to recover possession without regard to the effect of the judgment in the present action.

The other exceptions relate to the merits of the controversy.

It was argued that the dedication had not been consummated when the suit was brought, by reason of the absence of an acceptance or user by the public of that part of the street which is in controversy. That question has been set at rest in the courts of this state. Acceptance by a formal adoption by the public authorities or by public user is necessary to impose on the public the duty to amend or repair, but is not essential to the consummation of the dedication so as to cut off the owner from the power of retraction or subject the dedicated lands to the public use, whenever, in the estimation of the local authorities, the wants or convenience of the public require it for that purpose. *Dummer* v. *Den ; Methodist Church* v. *Hoboken ; Mayor of Jersey City* v. *Mor-*

*ris Canal,* 1 *Beas.* 553. But if recognition and adoption by public authority be essential to that end, the case furnishes conclusive proof of such public action. A city containing a population of several thousands has grown up on the territory included in the scheme of dedication, of which this street is part. In addition thereto, Loss' map and the streets thereon delineated, including the street in controversy, by name, have received repeated recognition by legislative action. *Acts,* 1838, *p.* 94; 1855, *p.* 465; 1858, *p.* 233; *preamble,* 1858, *p.* 369.

The main contention of the defendants' counsel on the argument was with respect to the effect of the dedication, which was proved and found by the jury, as regards the right of the public to have the street extended over the lands reclaimed beyond the original high water mark.

The title to the soil between the high water line, as shown on Loss' map, and the present high water line, was originally in the state. It became the property of the defendants' by reclamation under the powers contained in their charter. The contention was that it was not competent for Col. Stevens to impress upon lands, the property of the state, a servitude such as the plaintiffs are seeking to have them appropriated to, and that when the defendants acquired title under legislative permission, they were entitled to hold such lands unimpaired by the servitude imposed on the upland. The first branch of this proposition is conceded. But whether it will be available to his grantees to defeat the present claim of the city, will depend upon considerations incident to the nature and effect of the original dedication. The street as dedicated extended to the high water mark, as it then was. There is no street shown on the map, or in fact, along the river in which Fourth street might terminate. River street, which is the first street crossing Fourth street parallel with the river, is laid down on the map at a distance of about seventy-five feet from the high water line, as it appears on the Loss map. The location of Fourth street, with its terminus at the water, demonstrates conclusively that its purpose was to provide a

means of access for the public to the navigable waters, and such was the scope and purpose of the dedication.

Although the doctrine of dedication is founded on principles which are peculiar, yet it will be seen on an analysis and comparison of the cases, that it differs from a grant only in the mode and the means by which a dedication is effected. Dedication is distinguishable from a grant in that no special grantee need be in existence to accept the gift, and contrary to the rules of the common law, an interest in lands may thereby be created without the intervention of the ordinary common law assurances. The intention of the donor may be gathered from his acts and declarations, resting only in parol. But when that intention is once ascertained, the character and scope of the dedication are as unalterably fixed as if the gift had been consummated by a formal instrument of grant. The same legal incidents and consequences attach, and the donor is equally concluded from any act which will impair the effect of the gift. It was in this view of the nature and effect of a dedication, that the Supreme Court of the United States applied to the public right, acquired by dedication, the rule of construction of private grants, that a grant of land bounded on a stream which has gradually changed its course by alluvial formations, holds to the new boundary, including the accumulated soil. *New Orleans* v. *The United States*, 10 *Peters* 717.

On the same principle, this court held that a dedicated street terminating at the waters of a navigable river, is continued to the new water front obtained by filling in, in front of the shore, by the owner of the land over which a street was dedicated. *Jersey City* v. *Morris Canal*, 1 *Beas.* 548. The criticism by counsel on the case just cited was, that the opinion of Mr. Justice Whelpley, on this point, not being necessary for the decision of the cause, was mere *obiter dictum*. It was not so understood by Chancellor Green, in *Newark Lime and Cement Co.* v. *The Mayor of Newark*, 2 *McCarter* 64, in which it was distinctly held that the survey of a highway to a navigable river carried the highway to the river, wherever it is found, and that if the shore is extended by

alluvial deposit, or by filling in by the proprietor, the public easement is, by operation of law, extended from its former terminus over the new made land to the water. In both these cases, *The People* v. *Lambier*, 5 *Denio* 9, a case in many respects similar to that now before the court, was cited with approbation. In Barclay v. Howell's Lessees, the dedicated street lay along the banks of the Monongahela, which was a navigable river. In the plan of dedication, the northerly line of the street only was marked, and on the south of that line a space was left open to the river. The width of the street was undefined, and nothing appeared on the plan to limit its width short, of the river. In a controversy between the right of the city and the owner of the fee in relation to a strip of land along the river, the claim of the city was sustained. In the opinion of the court, Mr. Justice McLean declared that it was of no importance, whether the dedication was to high or low water mark; that with boundary of the street on a public river, the public right in the street was limited only by the public right in the navigable waters, and that to contend that between the boundary of the street and the public right in the river, "a private and hostile right could exist, would not only be unreasonable, but against law."

In my judgment, these cases declare the law correctly on this subject. The essence of the gift is the means of access to the public waters of the river, the advantage of which induced the growth of a city, by reason of its adjacency and connection with the important navigable waters of the Hudson, which gave a peculiar commercial value to the lots put in the market by the dedication, which can only be preserved by maintaining unbroken the connection of the streets with the navigable river. Any obstructions of that access would not only derogate from the effect of the gift, but would also be a public nuisance.

The remaining exceptions are based on the assumption that the easement has been abandoned by the municipal authorities, or become extinct by lapse of time, or that that

part of it which would otherwise extend over the reclaimed land, has been discharged by legislative action.

The insistment that the easement has been abandoned, rests on the ordinance adopted by the common council on the 30th of December, 1857, which ordains that Fourth street shall extend westerly from River street to the line ditch. The ordinance does not admit of that construction. Its import is merely an adoption of the street for present improvement, with a view to assume the burden of putting it in condition for use, and of emendation and repair. But if the ordinance admits of a different construction, the conclusive answer to this position lies in the fact that the municipal authorities have no power to discharge the public right. The easement is vested in the public. The local corporate authorities, by the city charter, are empowered to open, work, amend and repair streets. Incident to that is the discretion when and how a dedicated street shall be improved for public use, and the power to bring suits to assert and protect the public right. But they cannot release or discharge the public right unless authorized to do so by legislative authority, or apply the lands to a purpose different from the uses for which the dedication was made. *Methodist Church* v. *Hoboken.* Nor will lapse of time, however long the public user is suspended in abeyance, though coupled with an user by the owner, which might otherwise be adverse, make title by prescription against the public. *Mayor of Jersey City* v. *Morris Canal; Cross* v. *Morristown,* 3 *C. E. Green* 305. The legislature alone has the power to release the dedicated lands and discharge the public servitude when it once has attached. Extinguishment by legislative action, it is insisted, has been effected as to part of the premises in dispute, by the fourth section of the defendants' act of incorporation. The argument was, that the land below high water being the property of the state, and both the easement and the title being under legislative control, the extinguishment of the former, by a necessary implication, resulted from the grant of the latter. I am unwilling to concur in this construction of the statute.

The grant to the defendants is not of lands of the state in express and definite terms. The right conferred is a mere privilege of reclamation and appropriation to private uses. Its exercise is expressly limited to lands covered with water in front of and adjoining lands that should be owned by the corporation. The proviso annexed to the grant shows clearly the legislative intent, that the rights of others owning to the water should not be interfered with without express consent. In *The People.*v. *Lambier*, the Supreme Court of New York in construing an act authorizing certain individuals to construct and maintain wharves, docks, piers and bulkheads for private use in the East river in front of their lands, decided that lands over which a perpetual right of way existed in favor of the public for a street, were not included within the expression "their lands," in an act granting privileges to individuals. The Supreme Court of this state in *The State* v. *Brown*, 3 *Dutcher* 13, held that the owner of the fee who had conveyed to a canal company a strip of land bounded on navigable waters, "as long as used for a canal," was not entitled to a license under the wharf act to build docks and wharves in front of such lands, and that although it might not be competent for the canal company, under their charter, to acquire the rights of riparian owners, they might prevent the owner of the fee from exercising those rights. It is a plain deduction from the opinion of the Chief Justice in that case, that in his view, by "owner of lands situate along or upon tide waters," in the wharf act, is meant the present owner of an immediate estate in possession, and that it was not intended to confer the privileges of the act upon individuals in whom the ultimate fee was vested, subject to a present possessory right in others.

*The State* v. *Brown* was reversed on error, but not with respect to any of the grounds on which it was decided by the Supreme Court. The conclusion reached, and the reasoning which led to it, if not approved were not disapproved by this court. Any other construction than that made by the Supreme Court would do violence to the just rights of the owners

of estates for years, for life, or of uncertain duration less than the unqualified fee. The reversal was on the ground of the want of jurisdiction in the board of chosen freeholders to adjudicate upon the title to lands. *Brown* v. *Morris Canal,* 3 *Dutcher* 648.

With respect to lands over which streets have been laid, the ownership, for all substantial purposes, is in the public. Nothing remains in the original proprietor but the naked fee, which, on the assertion of the public right, is divested of all beneficial interest.

It is not necessary, on the present occasion, to express any opinion as to whether the defendants could, under their charter, have filled in, in front of streets terminating at the water, as against the public authorities resisting the execution of the work. The cases above cited are referred to to show the strictness of the construction made of statutes granting privileges of this kind to private persons. The decision of the Court of Chancery and of this court, in *The Keyport, &c., Co.* v. *The Farmers' Transportation Co.,* 3 *C. E. Green* 13, 511, is also illustrative of the same rule.

The defendants' act of incorporation would probably relieve the defendants, after the work was executed, from the consequences of an unlawful encroachment on public lands in front of the streets, and of a nuisance in the obstruction of navigation; but it cannot affect the public easement of access to the navigable waters which existed before the act was passed. That public right is entirely distinct in its essential qualities, from the title of the state in lands under tide waters. The former inheres in the state in its sovereign capacity. The latter is strictly proprietory. A grant of the proprietory title will never operate as a release or extinguishment of a sovereign right not necessarily included within the scope of the grant. *The State, Morris Canal and Banking Co., pros.,* v. *Haight, ante p.* 471.

The grant to the defendants comprised the valuable privilege of acquiring title to lands under tide waters, along their entire frontage on the river. The public easement is legally

consistent with title to the soil in a private owner, and the legislative intent to vest the proprietory title in the defendants, will have legal effect without extinguishing the public right of access to the river, derived from the original dedication. Where two public rights of different origin, distinct in their nature, and capable of a separate enjoyment, exist, a grant of the one will not extinguish the other, unless required by clear and unequivocal language. The cardinal rule of construction is the inquiry whether the legislative gift can take effect without drawing to it the additional right claimed. If it can, the latter is, by operation of law, excluded from the grant. *Paterson and Newark R. R. Co* v. *Stevens,* 5 *Vroom* 532.

In The People v. Lambier, a legislative grant to individuals of the privilege to fill in in front of their lands, under which the owners had extended the main land, was held to be inoperative to extinguish the public right of access to the navigable waters, by a street which originally had its terminus on the shore. The decision, in that case, is founded in correct principle, and is in harmony with rules of construction frequently applied by the courts of this state in construing public grants.

The act incorporating the defendants contains no language indicative of an intent to extinguish the public right of access to the river, and the defendants hold the title acquired by legislative permission, subject to the obligation that resulted from the original dedication of permitting the connection of the street with the navigable waters to remain unbroken.

There is no error in the instructions of the court to the jury, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LATHROP, LILLY, WALES.    13.

*For reversal*—None.

CITED *in Borough of Chambersburg* v. *Manka,* 10 *Vr.* 496; *Price* v. *Inhabitants of Plainfield,* 11 *Vr.* 608; *N. Y., L. E. & W. R. R. Co.* v. *Yard,* 14 *Vr.* 121; *Hunt* v. *O'Neill,* 15 *Vr.* 564.